**BREWER & PRITCHARD, P.C., Appellant,**

v.

**Nick JOHNSON and James W. Chang, Appellees.**

No. 01–98–01381–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 16, 1999.

Steven G. Ruprecht, Kansas City, J. Mark Brewer, Russell B. Starbird, Houston, for Appellant.

Thomas R. McDade, William P. Maines, Grant Cook, Robert Lee Galloway, Houston, for Appellee.

Panel consists of Justices MIRABAL, TAFT, and NUCHIA.

## OPINION

SAM NUCHIA, Justice.

Appellant, the law firm of Brewer & Pritchard, P.C. ("B & P"), sued James W. Chang, a former associate with the firm, and Nick Johnson, Chang's friend and current law partner, alleging breach of fiduciary duty, civil conspiracy, conversion, actual and constructive fraud, and negligence. The trial court granted defendants' motion for summary judgment on all causes of action. We affirm in part and reverse and remand in part.

## BACKGROUND

On April 1, 1995, while employed with B & P, Chang and his friend, Henry King, were on vacation together when they learned of a helicopter crash near Flower Mound, Texas, in which King's father, Herbert King, and six other passengers were injured. Chang and King returned to Houston where Chang, on King's behalf, contacted several plaintiff's attorneys who specialize in catastrophic personal injury cases. Chang also discussed the case with Nick Johnson, a sole practitioner at that time. Chang and King met with several attorneys, including Joe Jamail and Johnson. On April 6, 1995, King signed an attorney fee contract with Johnson with the understanding that Johnson would refer the case to Jamail. Johnson's agreement with Jamail was that he would receive 50 percent of the attorney's fee upon the conclusion of the case. The case settled for $15,000,000, and Johnson received a $3,000,000 referral fee, less expenses. Chang left B & P in June 1995 and began working with the firm of Adams & Reese.

Thomas C. Pritchard, a shareholder of B & P, testified by affidavit that Chang approached him regarding the helicopter crash shortly after the accident. According to Pritchard, Chang said he could control the case, which involved a significant business opportunity for the firm. Pritchard said the firm was definitely interested in the case. Chang did not tell Pritchard that one of the victims was the father of his close friend, or that Chang considered his friend's father to be a "surrogate father." Pritchard also said in his affidavit that, on Tuesday, October 8, 1996, Sabrina McTopy told him that Mark Coffin, Chang's supervisor at the firm of Adams & Reese, said Chang was a multi-millionaire as a result of his 50% fee-sharing agreement with Joe Jamail on the helicopter case.

Patrick E. Gaas, a shareholder of B & P, testified by affidavit that he met with Chang shortly after the helicopter crash. Chang told Gaas that the accident involved

a Chinese delegation and a friend of his mother. He said he could control the case and "sign up" the victims on a contingency agreement or refer them to another lawyer because of his fluency in Mandarin, his connections with the Chinese community, and his mother's personal acquaintance with one of the victims. Gaas told Chang about contingent fee agreement forms in the firm's files and discussed such matters as structuring percentages of recovery, closing an agreement with the client, issues to watch out for, and referral fees in the event they refer the case to another lawyer or associate with another lawyer for the case. Gaas discussed possible attorneys to whom they could refer, including Fisher Gallagher & Lewis, Mithoff & Jacks, Joe Jamail, Ernest Cannon, and John O'Quinn. Gaas said Chang indicated he would have no problem signing up the plaintiff; he would be in the best position to make a fee arrangement with the crash victims; and he would keep Gaas advised.

Later, according to Gaas, Gaas asked Chang about the case, and Chang said that Joe Jamail was handling the case. Gaas asked, "How does that guy manage to get all these cases?" Chang speculated it was because Jamail was very famous, and clients and referrals gravitate to him. He did not indicate any further knowledge regarding how Jamail got the case. He also did not indicate that one of the victims was the father of a close friend and a "surrogate father" to him.

Chang contacted six attorneys or law firms regarding possible referral of the helicopter case. The record does not reflect the dates on which some of these contacts were made. The record contains a letter from Richard Mithoff to Chang dated April 5, 1995, saying, "I enjoyed meeting with you and Henry very much this afternoon." Another letter from Mithoff to Chang dated April 6, 1995, indicates Mithoff would have liked to talk further with Chang or Johnson.

The record also contains a case intake sheet from the files of O'Quinn, Kerensky, McAninch & Laminack dated April 3, 1995,

showing a referral from Chang of an injured party named Herbert King and identifying King as Chang's client. By a letter dated June 8, 1995, the O'Quinn firm declined representation.

Also contained in the record are an "Attorney Fee Contract and Assignment of Interest" between Henry King and Johnson dated April 6, 1995, a letter from Jamail to Johnson acknowledging receipt of the King file dated April 7, 1995, and a letter from Jamail to Johnson acknowledging receipt of five additional files dated April 19, 1995.

The affidavit of J. Mark Brewer, a shareholder and custodian of records of B & P, was attached to B & P's response to appellees' motion for summary judgment. Attached as exhibits to Brewer's affidavit are: computer-generated electronic mail messages of incoming calls to Chang, long distance telephone bills of outgoing calls, facsimile logs of incoming facsimile transmissions and journal of outgoing facsimiles, and messenger delivery slips involving Chang. According to the affidavit, these records show nine telephone messages from Johnson between April 3, 1995 and June 1995, six calls from Jamail's office, and several calls from Mithoff and Wayne Fisher, another well-known plaintiff's attorney, in the week after the accident. The record of long-distance telephone calls shows that Chang called Harris Methodist Hospital in Fort Worth, Texas, where the injured crash victims were taken, several times on April 3, 1995. He also called the hotel in Fort Worth, where the victims' families were staying, several times on April 7, 1995.

Also, according to the affidavit, the fax records show faxes to Mithoff on April 5 and 6, 1995, to and from Johnson on April 6, to King on April 7, and to Jamail on April 20. Each of the faxes and long-distance calls was billed to B & P's "business development" account.

The affidavit of Rebecca K. Marquette, a summer associate at B & P in 1995, was also attached to B & P's response to the

motion for summary judgment. Marquette stated that she and Chang became friends while she was at B & P. She said he bragged to her that he had something working outside of his employment that would probably make him rich enough to retire. After he left the firm in June 1995, he asked her to retrieve some records from his computer, but she refused. She did not see him after August 1995, when she returned to law school.

Appellant sued appellees on October 11, 1996, alleging breach of fiduciary duty and other causes of action. Discovery was conducted, and, in August 1998, appellees filed a motion for summary judgment, which was set for hearing on September 22, 1998. On September 4, 1998, appellant filed a notice of non-suit and, on the same day, filed an original petition in this case alleging the same causes of action as pleaded in the first case. Appellees answered and immediately filed a motion for summary judgment under rule 166a (c) and (i) of the Texas Rules of Civil Procedure. This motion asserted that (1) B & P was not entitled to any referral fee because the plaintiffs had not consented to their participation, (2) no fiduciary duty existed between B & P and appellees, (3) there was no evidence of specified elements of civil conspiracy, conversion, actual fraud, and negligence, (4) there was no constructive fraud because there was no fiduciary duty, and (5) all the causes of action except fraud are barred by the two-year statute of limitations because the cause of action accrued in April 1995, and B & P filed the lawsuit on September 4, 1998. Appellees also asserted that there were no issues of material fact and they were entitled to judgment as a matter of law.

B & P responded to the motion by asserting that an associate owes a fiduciary duty to his law firm, citing *Bray v. Squires*, 702 S.W.2d 266 (Tex.App.—Houston [1st Dist.] 1985, no writ). B & P argued that the other causes of action were based on the breach of fiduciary duty. B & P pointed out that appellees did not negate the discovery rule or fraudulent concealment, and argued that it filed the lawsuit immediately upon learning of Chang's involvement in the referral of the helicopter case. B & P also asserted that appellees did not meet their burden of proving that there were no issues of material fact and were not entitled to judgment as a matter of law.

The trial court granted the motion for summary judgment on October 21, 1998, without specifying the grounds upon which the motion was granted.

## STANDARD OF REVIEW

Summary judgment under rule 166a(c) is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.*, 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing a summary judgment, we will take all evidence favorable to the nonmovant as true and must indulge every reasonable inference in favor of the nonmovant. *Johnson*, 891 S.W.2d at 644; *Lawson*, 888 S.W.2d at 33. As movant, the defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Johnson*, 891 S.W.2d at 644

Under rule 166a(i), a party may move for summary judgment if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R.App. P. 166a(i). Thus, a no-evidence summary judgment is similar to a directed verdict. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.); *see also* Hittner & Liberato, *Summary Judgments in Texas*, 34 Hous. L.Rev. 1303, 1356 (1998). A party may move for a no-evidence summary judgment after there has been adequate time for discovery. Tex.R. Civ. P. 166a(i). The motion may not be general, but must state the elements on which there is no

evidence. *Id.* The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements. *See* Tex.R. Civ. P. 166a(i) and cmt. to 1997 change.[1]

The general requirements of summary judgment practice continue to be governed by the existing rules. *Id.,* cmt. to 1997 change. Therefore, in reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson,* 891 S.W.2d at 644.

We will affirm a summary judgment if any of the theories advanced in the motion for summary judgment and preserved on appeal is meritorious. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

## DISCUSSION

Appellant presents two issues in this case: (1) whether an associate breaches his fiduciary duty to his law firm by "shopping" cases to other law firms for individual profit, and (2) whether the trial court erred in granting defendants' motion for summary judgment.

### *Fiduciary Duty*

■ In their motion for summary judgment, appellees did not contend that there was no evidence that they breached a fiduciary responsibility to B & P or that there was no evidence of damages from an alleged breach of such a duty. Rather, they asserted that, because Chang, as an associate, was an employee at will, there was no fiduciary duty between him and B & P.

■ A fiduciary relationship creates a special bond requiring the bound parties to deal fairly and in good conscience. *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 513 (1942). The relationship establishes a duty to "act for or give advice for the benefit of another upon matters within the scope of the relation." *Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Generally, fiduciaries are expected to conduct their business by a higher standard of equity than would be used in ordinary dealings. *Kinzbach,* 160 S.W.2d at 514.

■ A fiduciary relationship may exist in the absence of a contractual relationship. *Kline,* 874 S.W.2d at 786. A fiduciary duty arises where a party places a "special confidence" in another which binds the other "to act in good faith with due regard to the interests of the one placing confidence." *Id.* Moral, social, domestic, and personal relationships can even establish fiduciary relationships where one party places "implicit trust and reliance on another." *Id.* Whether a fiduciary duty exists is a question of law for the court's determination. *Fuqua,* 683 S.W.2d at 737.

■ A breach of the fiduciary duty is actionable against the breaching party **and** any third party who knowingly aids and assists in its breach. *Kinzbach,* 160 S.W.2d at 514; *Kline,* 874 S.W.2d at 786; *Bray,* 702 S.W.2d at 271. Where the facts are undisputed, the question of breach is determined by the court. *Fuqua,* 683 S.W.2d at 738. Otherwise, the determination is left to the fact finder.

■ There is a fiduciary relationship between associates and the law firm or partner for whom they work. *See Bray,* 702 S.W.2d at 270. In *Bray* we stated:

It is every lawyer's ethical responsibility to maintain the highest standards of professional conduct. This is true, not only in the lawyer's dealings with his client and the public in general, but also in his relationship with other members of the bar, including his own partners and associates.... Because of a law-

---

1. On August 15, 1997, in Misc. Docket No. 97–9139, the Texas Supreme Court signed and entered an order of final approval of revisions to rule 166a, effective September 1, 1997. This order provides in part, "The comment appended to these changes, unlike other notes and comments in the rules, is intended to inform the construction and application of the rule...." 60 Tex. Bar J. 872 (Oct.1997).

yer's special position in society, even minor wrongdoing tends to lessen the public's confidence in the legal profession. Thus, a lawyer is expected to refrain from any conduct that creates the impression of dishonesty, fraud, or deceit. *Id.* During the course of their employer-employee relationship, the associate has "a duty to deal openly and to make full disclosure to the other members of the firm about matters affecting the firm's business." *Id.* If, during the relationship, the associate uses his position to gain a business opportunity belonging to the firm, the conduct would constitute an actionable wrong. *Id.; see also MPI, Inc. v. Dupre,* 596 S.W.2d 251, 254 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

In the present case, because Chang was an associate of B & P, there was a fiduciary relationship between B & P and Chang. Whether Chang breached that fiduciary duty and whether any breach was a proximate cause of damages to B & P are issues of fact to be determined by the trier of fact. In addition, whether Johnson knowingly assisted Chang in any breach of his fiduciary duty to B & P is an issue of fact. Appellees did not move for summary judgment on breach of fiduciary under the "no evidence" rule, and they did not establish, as required by rule 166a(c), that there is no issue of material fact regarding breach of fiduciary duty. *See* Tex.R. Civ. P. 166a(c) and (i).

Accordingly, we sustain B & P's issue as it relates to the fiduciary duty between B & P and Chang.

### Civil Conspiracy, Conversion, Actual Fraud, and Negligence

■■■■ In their motion for summary judgment, appellees pleaded that there was no evidence of a meeting of the minds, an unlawful purpose, or unlawful means to accomplish a lawful purpose as required to support a claim for civil conspiracy.

Appellees also pleaded that B & P's conversion claim failed because B & P did not have an ownership interest in the King claim, that there was no evidence the plaintiffs agreed that B & P would receive a referral fee, and that Johnson's receipt of any portion of the fee was not inconsistent with B & P's rights because B & P was not entitled to the fee.

■■■■ Appellees asserted that there was no evidence to support B & P's claim for actual fraud because there was no evidence that Johnson or Chang made any representation with the intent that B & P act upon it and no evidence that B & P acted in reliance upon any representation by Chang or Johnson. Appellees pleaded that there was no proof of a duty, breach, proximate cause, and damages as required by B & P's claim for negligence. Thus, appellees met their burden under rule 166a(i) of moving for summary judgment on the ground that there was no evidence of one or more essential elements of B & P's claim under its actions for civil conspiracy, conversion, actual fraud, and negligence. The burden then shifted to B & P to produce summary judgment evidence raising a genuine issue of material fact on those elements challenged.

■■■■ B & P's response to the motion for summary judgment did not address the evidence in their summary judgment proof as it related to the challenged elements of the causes of action. B & P merely asserted that its "claims of conspiracy, conversion, actual and constructive fraud, and negligence are all based on Chang's breach of his fiduciary duty to B & P." B & P set out its arguments for the existence of a fiduciary duty but made no further reference to the other causes of action or their elements. Although B & P asserted often that there were genuine issues of material fact, the assertion was general in nature and did not relate to the specific challenged elements. We are not required to search the record without guidance from appellant to determine whether it has produced evidence raising a genuine issue of material fact on the elements challenged by appellees. *See Nawas v. R & S Vending,* 920 S.W.2d 734, 737 (Tex.App.—Houston [1st Dist.] 1996, no writ).

The dissent states that appellant has made specific reference to the record in its response to the motion for summary judgment and appellate brief sufficient to raise issues of material fact. We believe this is somewhat misleading because, although it is true that appellant globally stated facts to support its conclusions as it sees them and cited to the record in support of those facts, it made no effort to connect any of the facts to the challenged elements of the causes of action. We believe rule 166a(i) requires the non-movant to make that connection.[2]

B & P has not met its burden, under rule 166a(i), to point out, in its response to the motion for summary judgment, summary judgment evidence raising a genuine issue of material fact on any of the elements on which appellees contended there was no evidence. Accordingly, B & P's issue as it relates to the causes of action for conspiracy, conversion, actual fraud, and negligence is overruled.

### Constructive Fraud

■■■ In their motion, appellees recognized that constructive fraud "is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship," citing *Stephanz v. Laird,* 846 S.W.2d 895, 903 (Tex.App.— Houston [1st Dist.] 1993, writ denied). They argue that, because they did not owe B & P a fiduciary duty, there could be no claim for constructive fraud. Appellees did not assert that there is no evidence of any element of constructive fraud, nor did they establish that there are no issues of material fact regarding this cause of action. Therefore, appellees have not met their burden under subsections (c) or (i) of rule 166a with respect to B & P's cause of action for constructive fraud.

2. The comment to the 1997 change to rule 166a states:

   Paragraph (i) authorizes a motion for summary judgment based on the assertion that, after adequate opportunity for discovery, there is no evidence to support one or more specified elements of an adverse par-

Because we have already determined that there is a fact issue regarding Chang's fiduciary relationship with B & P, we sustain appellant's issue as it relates to constructive fraud.

### Statute of Limitations

In their motion for summary judgment, appellees contended that all B & P's causes of action except fraud were barred by the two-year statute of limitations. B & P filed an amended petition pleading the discovery rule and fraudulent concealment. In its response to the motion for summary judgment, B & P asserted that it did not discover and could not have discovered appellees' breach of fiduciary duty until it learned of the settlement and the referral fee paid to Johnson. B & P also argued that appellees fraudulently concealed the breach of fiduciary duty by lying to B & P about their actions. B & P urges these same contentions in its appellate brief.

■■■ Appellees did not amend their motion for summary judgment, nor did they make any reply to B & P's assertion of the discovery rule. A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense, and when the plaintiff pleads the discovery rule, the defendant must negate that exception. *Velsicol Chemical Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997).

Appellees have not negated the discovery rule, and, therefore, summary judgment could not have been properly granted on the ground of limitations. Accordingly, we sustain B & P's issue as it relates to the statute of limitations.

### Consent to Referral Fee

■■■ Appellees assert that an issue presented in this appeal is whether a law firm may receive a referral fee without adher-

ty's claim or defense.... To defeat a motion made under paragraph (i), the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements....

TEX.R. CIV. P. 166a and cmt. to 1997 change.

ing to the requirements of Texas Disciplinary Rule of Professional Conduct 1.04. Rule 1.04 provides in pertinent part:

> A division or agreement for division of a fee between lawyers who are not in the same firm shall not be made unless
>
> (1) the division is
>
>> (i) in proportion to the professional services performed by each lawyer;
>>
>> (ii) made with a forwarding lawyer; or
>>
>> (iii) made, by written agreement with the client, with a lawyer who assumes joint responsibility for the representation;
>
> (2) the client is advised of, and does not object to, the participation of all the lawyers involved; and
>
> (3) the aggregate fee does not violate paragraph (a) [dealing with illegal or unconscionable fees].

TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(f).

Appellees contend that the applicability of rule 1.04 is a sufficient ground for summary judgment in their favor.

B & P argued in its response to the motion and argues on appeal that rule 1.04 is inapplicable because B & P is not suing for breach of a fee agreement but for breach of a fiduciary duty, and that the contingent fee is the measure of damages.

We agree with B & P that rule 1.04 does not support the summary judgment on the cause of action for breach of fiduciary duty.

### Conclusion

We affirm the judgment of the trial court granting summary judgment in favor of appellees on the causes of action for civil conspiracy, conversion, actual fraud, and negligence. We reverse the judgment of the trial court on the causes of action for breach of fiduciary duty and constructive fraud and remand this cause to the trial court for further proceedings.

Justice MIRABAL concurring and dissenting.

MIRABAL Justice, concurring and dissenting.

I respectfully suggest that the majority opinion has utilized a broad brush on this case, when a fine brush is called for. Throughout its response to the motion for summary judgment, as well as in its brief on appeal, appellant has provided specific record references to summary judgment evidence that raised genuine issues of material fact. Yet, the majority opinion concludes the response was insufficient to prevent the granting of a no-evidence summary judgment as to four causes of action because appellant did not repeat, as to each of its pled causes of action, the same evidence that raised a fact issue as to all of the causes of action. I disagree.

Appellant's claims in this case are based on the allegations that an associate worked on a case on firm time, using firm resources; as a result, the associate received a fee; the associate lied to the firm about the fee, hiding the fact of the fee from the firm; and the associate's cohort/attorney-friend joined in a scheme to make it appear that the associate was not going to receive any portion of the fee. B & P sued the associate for breach of fiduciary duty; further, B & P sued both the associate and his cohort/attorney-friend for conspiracy, conversion, actual and constructive fraud, and negligence.

As will be set out in detail in this opinion, the central basis for appellees' no-evidence motion for summary judgment was that there was no evidence that the associate received, or would receive, a fee, and therefore the associate did not owe a fiduciary duty with regard to a non-existent fee, and thus there was no conspiracy, conversion, fraud or negligence with regard to the non-existent fee. In its response to the no-evidence motion for summary judgment, appellant specifically pointed out evidence that raised a fact issue about whether the associate received, or would receive a fee, and asserted that such evidence supported appellant's claim for breach of fiduciary duty, and all of its

other claims (conspiracy, conversion, actual fraud, constructive fraud, and negligence) that were centered around the claim that the associate breached his fiduciary duty. In my opinion, appellant's response was sufficient to prevent summary judgment. The majority, on the other hand, finds the response fatally defective with regard to certain causes of action because appellant "lumped" its argument to cover all the causes of action, rather than addressing each cause of action separately. I do not believe Rule 166a requires a respondent to repeat, in separate paragraphs addressing separate causes of action, the same evidence that raises a fact issue as to all of the causes of action.

A no-evidence summary judgment is improperly granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact. *Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex.App.—Houston [1st Dist.] 1999, no pet.); Tex.R. Civ. P. 166a(i). Appellant met its burden under rule 166a(i) to "produce summary judgment evidence raising a genuine issue of material fact" as to each of its causes of action. Further, appellees failed to meet their burden under rule 166a(c) to prove they were entitled to judgment as a matter of law. Accordingly, summary judgment was improperly granted.

### THE PLEADINGS

I will reproduce portions of the relevant pleadings practically verbatim.[1]

#### Plaintiff's First Amended Original Petition

1. James Chang, directly or through an intermediary, was *engaged* by Flower Mound helicopter crash victims *while employed by Brewer & Pritchard.*

2. Chang combined and conspired with Nick Johnson ... to refer, without the consent or knowledge

of (Brewer & Pritchard) the subject litigation to Jamail & Kolius.

3. Chang had a duty of loyalty to Brewer & Pritchard at all times during his employment by that firm.... Chang breached his fiduciary duties to Brewer & Pritchard in order to *seize for himself* what he correctly perceived to be a lucrative business opportunity.

4. The fact that Brewer & Pritchard was not included in the fee agreement (with Jamail & Kolius) was brought about by the fraudulent action of Chang and Johnson. Specifically, Johnson acted as Chang's intermediary in obtaining the Jamail & Kolius referral fee. As a consequence of their unlawful conspiracy, Chang and Johnson are jointly and severally liable for all damages incurred by Brewer & Pritchard.

5. The activities of Chang and Johnson also give rise to a cause of action for conversion. Defendants combined and conspired to convert *for themselves* the Jamail & Kolius referral fee.

6. Chang and Johnson fraudulently concealed and intentionally failed to disclose material facts to Brewer & Pritchard. Chang additionally made false representations of material fact to Brewer & Pritchard.

#### Defendants' Motion for Summary Judgment[2]

1. *Because Chang did not represent* any of the plaintiffs, [in the plane crash litigation], *Chang received no share of the referral fee* ; nor did he receive any remuneration for the support and guidance he provided Henry King and his family. In fact, he told Henry

---

1. Appellant is referred to, interchangeably, as "B & P" or Brewer & Pritchard.

2. This was defendants' second motion for summary judgment.

King specifically that he was not interested in representing him and "did not want any fee."

2. Chang helped a close friend and his family retain competent counsel who obtained an outstanding result. *He did this for free. Chang received no part of Johnson's fee and has no agreement or expectancy* to receive anything from Johnson as a result of that case. Likewise, Henry King does not intend to pay Chang a fee.

**Plaintiff's Response to Defendants' Motion for Summary Judgment[3]**

1. James Chang was an associate at Brewer & Pritchard. At no time during Chang's association with B & P were associates of B & P permitted to conduct or perform outside legal work for their own account.... Chang, however, was in the naughty habit of trying to *make money on the side*, without the knowledge of his employer; he referred matters to his pal, Nick Johnson, who would pay him *a referral fee* when the matter was concluded—even though the two had no express "agreement." Of course, Chang never told anyone at B & P that he was referring cases to Nick Johnson.

2. Chang and King were on a skiing vacation together in New Mexico on the weekend of the crash. After the accident, Chang and King quite naturally discussed the legal actions available to King's family.... They ultimately decided to do so in a way which would create a *personal windfall to Chang* at the expense of his law firm, B & P.

3. Later, on inquiry by Mr. Gaas [a B & P shareholder], Chang lied, saying he lost the case. Gaas asked him what had happened, what had gone wrong. Chang lied again, this time telling him that Mr. Joe Jamail had signed up the plaintiffs.... Chang disclaimed any knowledge as to how Mr. Jamail procured the engagement .... [concealing] that he himself had facilitated Mr. Jamail's involvement in the case to B & P's exclusion. Nor did B & P have any idea that Chang was actually helping King shop the case to some of the best-known lawyers in town, the identity of most of which was given to Chang by Mr. Gaas.... Barely two months later, Chang quit his job at B & P, inexplicably.

4. It was Chang who first brought King to Mr. Joe Jamail, *without* Johnson. Mr. King then met with defendants Johnson and Chang, and Johnson told King that he would *immediately "flip" the case*, i.e., refer it to Mr. Joe Jamail. King, knowing that Johnson would do nothing but "flip" the case to Mr. Jamail, decided to "hire" Johnson.

5. Chang claims that he was only "helping" King out as a friend, and would therefore receive no benefit from the lawsuit. This clearly is false, as demonstrated by incoming and outgoing faxes, messenger receipts, and telephone messages, all charged by Chang's own hand, to B & P's "business development" account. In addition, although Johnson incredibly claims that he did not know that Chang was an associate at B & P (and thus presumably could not conspire with Chang to breach his fiduciary duty), B & P's telephone records show multiple telephone calls from Johnson to Chang, both

3. Throughout B & P's response to the motion for summary judgment, B & P refers to summary judgment evidence including deposition testimony, affidavits and documents.

prior to and the weeks immediately following the accident. At all times, Johnson and King knew that Chang was not a solo practitioner; they knew that Chang worked at a law firm. That friends as good as these two defendants knew where each other worked, and for whom, is obvious from the fact that these defendants are personal friends, not to mention that they had also been law school chums and are now partners in their own law firm. That Johnson would claim to not know Chang was a B & P associate is so lacking in credibility and believability, it impeaches a great deal of his testimony.

6. Chang himself continued to have some involvement in the aircraft case. Not only did he exchange correspondence with Mr. Jamail after telling Mr. Gaas he had lost the representation to Jamail, but he also appeared in court before the Honorable Nancy Atlas, U.S. District Judge. In fact, when news of the settlement reached B & P in October 1996 and of Chang's role in it, Chang was off to China at *Judge Atlas' instructions,* to close the settlement with the Chinese plaintiffs.

7. Johnson received a referral fee of **$3,000,000** (three million dollars) (less expenses, for a total of $2,944,884.83). He got this money on October 17, 1996. On December 16, 1996, Johnson *gave* Lasco Oil & Gas, Inc. $1,490,000.00. Two weeks later, on the last day of the tax year, Johnson gave Lasco another $650,000.00. Remarkably, Johnson claims that immediately after giving the money to Lasco, *i.e., 2 weeks after the first transfer and the same day as the second transfer,* the investment was bad and he had lost the money. *Johnson claimed a $1,651,115 loss* for investment in oil and gas

exploration and production, *right after* he paid the money to Lasco. About a year later, Chang left the firm where he associated after he left B & P and joined a partnership with none other than Nick Johnson, after a brief office sharing arrangement. Conveniently, Lasco turns out to be a client of Chang and Johnson's firm, according to Chang at his August 1998 deposition. When asked about Lasco at his deposition, Chang used the attorney-client privilege as a sword, and refused to answer any questions relating to Lasco. These facts clearly evidence a sloppy but, thus far, effective scheme to *funnel half of the referral fee funds* through Johnson and Lasco and then, *back to Chang.*

8. B & P conducted an independent investigation into possible links between Lasco and the defendants. The results of this investigation, attached as exhibit C–1 to Patrick Gaas' affidavit, confirm and support the illicit scheme. These records reveal a connection between Larry A. Seligmann, whose initials form the first three letters of *"La*sco," and Johnson, as well as various relatives of Johnson. For instance, one entity related to Lasco and Seligmann is Towne Lake Properties, Inc., to which Johnson paid $250,000.00 during the same period that he gave Lasco over two million dollars. Nick Johnson, several of his relatives, as well as Mr. Seligman and the various Lasco entities, all have common connections to addresses at 4615 Southwest Freeway and 9 E. Greenway Plaza, Suite 2424, both in Houston, Texas. In addition, these records also reveal that Johnson's *own brother,* Chad, is involved with Lasco. Lasco is more than just a

client, it is an intrinsic part of a fraudulent scheme, and defendants should not be allowed to hide behind the attorney-client privilege to prevent plaintiff from investigating its claims and revealing the extent of defendants' wrongful actions, especially given the information sought is not privileged in any event. As more discovery is conducted into these issues, the scheme will continue to unravel, and Chang, Johnson, and the details of their unseemly conspiracy will be exposed more fully. For now, however, numerous reasonable inferences support plaintiff's conclusions.

9. B & P's claims of **conspiracy, conversion, actual and constructive fraud,** and **negligence,** are all based on Chang's **breach of his fiduciary duty** to B & P. Contrary to defendants' assertion, Texas courts have held that associates do owe a fiduciary duty to their law firm. If Chang is correct, which he clearly is not, every associate would be able to act in his or her own self-interest, and through self-dealing, run cases on the side while pretending to work "full time" for the law firm which employed them. This is obviously *not* the law, and again, it is such a strained argument that it impeaches the credibility of the defendants' entire position.

10. Chang clearly *self-dealt* while employed at B & P, to the substantial detriment of his employer. In fact, self-dealing is a gross understatement. Chang is guilty of nothing short of defalcation. He shopped the case to other law firms while employed at B & P. He told the partners that he was in control of the case, and asked how he could sign up the client. He told Thomas Pritchard and Patrick Gaas that he was excited about the contribution such a case would make to B & P. He charged expenses related to the Bell Helicopter case to **business development.** He told B & P attorney Rebecca Maquette, then a law student and summer associate, that *he would soon receive enough money that he could retire.* He lied to B & P when he said that he had no idea how Mr. Jamail got the case. He told that lie because he knew it was wrong to self-deal. He knew his employer would not consent to his miscreant behavior. With complete and utter disregard for his duty of loyalty as a fiduciary of B & P, *Chang seized the opportunity to cash in* at his employer's expense.

11. The evil of an *associate absconding with a referral fee* while employed at a law firm is appreciated by Chang's former supervisor at Adams & Reese, Mark Coffin. In October 1996, Coffin testified that he had heard over the last couple of years that Chang had been involved in a case that had settled, and that *Chang had a referral interest.* Coffin expressed concern that if this were true, Chang might leave the firm. Coffin further stated that any referral interest would belong to Adams & Reese, not B & P, and that if B & P were to prevail, he would recommend asserting a claim for Adams & Reese. Chang, however, claims he owes no fiduciary duty to his law firm. After the settlement of the Bell Helicopter case, Coffin's concerns were confirmed, and Chang left Adams & Reese at the end of 1997, and is now a partner with Johnson.

12. In this case, there is no way that B & P could have, or should have, known of Chang's breach

of fiduciary duty; nor do defendants assert that B & P should have known. In addition, the fraudulent concealment doctrine applies in this case, because defendants actively concealed their wrongful conduct by nondisclosure and by lying.

(Emphases added.)

## ANALYSIS

In their second motion for summary judgment, Chang and Johnson asserted the following grounds for summary judgment:

> **Ground one:** The King family never at any time agreed, authorized, or consented to pay B & P a referral fee or any other remuneration.

This ground misses the point of B & P's allegations. B & P asserts rights *arising out of Chang's relationship with B & P; i.e., **because Chang was an associate of B & P*** at the time he worked on the case and reached the agreement regarding a referral fee, B & P has an interest in *any fee Chang receives*. The first ground asserted does not address B & P's theory of recovery, and therefore does not support the summary judgment.

> **Ground two:** Chang, as an associate with B & P, did not owe the law firm or any of its principals any fiduciary obligation.

As set out in the majority opinion, case law is against Chang. The second ground does not support the summary judgment.

> **Ground Three:** The summary judgment proof shows that the underlying conduct was legal: there is nothing illegal about referring a case *without a referral fee*. Thus, there was no evidence of a conspiracy to accomplish an unlawful purpose or to engage in unlawful means.

Ground three is centered around the argument that Chang did not get a referral fee, and does not expect to get one. However, even though Chang and Johnson have denied that Chang has received, or will receive, any portion of the referral fee, there is also summary judgment evidence indicating Chang bragged about the referral fee he would get upon settlement, as well as evidence indicating the referral fee received directly by Johnson may have been funneled to his then-partner Chang, indirectly. The summary judgment record does not establish, as a matter of law, that Chang did not receive a portion of the involved referral fee; rather, a fact issue has been raised by the evidence. Accordingly, ground three does not support the summary judgment.

> **Ground four:** There is no evidence of conversion because Chang *did not receive any portion of the referral fee,* and the King family did not otherwise agree to B & P representing them or having any right to a referral fee.

As already discussed, the summary judgment evidence raises a fact issue regarding whether Chang has received a portion of the referral fee. Therefore, ground four does not support the summary judgment.

> **Ground five:** B & P's fraud claim fails because there is no evidence that Chang or Johnson made any false representation to B & P with the intent that B & P act upon such representation, and no evidence that B & P acted in reliance upon any such representation. Further, B & P's constructive fraud claim fails for the additional reason that Chang did not owe B & P a fiduciary duty.

Again, a fact issue has been raised about whether Chang has received a referral fee, with the assistance of Johnson, and therefore whether they made material misrepresentations to B & P when they denied any such fee existed. Further, Chang did owe a fiduciary duty to B & P. Therefore, ground five does not support the summary judgment.

> **Ground six:** The negligence and gross negligence claims fail because there is no evidence of duty, breach, proximate cause, or damages (because Chang did not receive a referral fee).

Again, due to the existence of a fact issue regarding whether Chang received a referral fee, there exist fact issues regarding the negligence causes of action. Ground six does not support the summary judgment.

**Ground seven:** Limitations.

I agree with the majority opinion's treatment of ground seven, and I likewise conclude it does not support the summary judgment.

## CONCLUSION

Chang and Johnson did *not* move for summary judgment on the basis that, *even if Chang did receive* a portion of the King case *referral fee*, Chang *still would owe no portion of it to B & P*. Thus, we do not have before us the issue of whether Chang would have a fiduciary duty to pay over all or a portion of the fee received by him to B & P just because he was employed as an at-will associate at the firm, and he used the firm's resources, when he arranged for the referral of the case to Jamail & Kolius.

We are restricted to reviewing the propriety of the granting of the summary judgment on the basis of the grounds actually asserted in the motion for summary judgment. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Home Indem. Co. v. Pate,* 814 S.W.2d 497, 500 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The grounds asserted do not support the summary judgment under Tex.R. Civ. P. 166a (c) or (i). Accordingly, I would sustain issue two, reverse the summary judgment *in toto,* and remand the case to the trial court.

