Opinion issued June 10, 2004











In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00157-CV




PATRICK MAYES, Appellant

V.

GOODYEAR TIRE AND RUBBER COMPANY, Appellee




On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 1999-61282




O P I N I O N

          This is an appeal of a take-nothing summary judgment rendered in favor of
defendant/appellee, Goodyear Tire & Rubber Co., against plaintiff/appellant, Patrick
Mayes, in his personal injury suit against Goodyear and co-defendant Corte Adams,
one of Goodyear’s employees. The trial court granted Goodyear’s motion for
summary judgment on the causes of action for vicarious liability and negligent
entrustment, then severed the cause from the suit against Adams. In two issues,
Mayes challenges the rendition of summary judgment, contending there are genuine
issues of material fact precluding summary judgment on either cause of action. We
agree with this contention; accordingly, we reverse.
Facts
          Goodyear hired Adams in April 1998 to work as a service
technician—changing tires and fixing flats—in its Houston, Texas shop. In
September 1998, Adams transferred to the Bryan, Texas shop, which specializes as
a commercial truck tire center; he was trained and promoted to the position of truck
alignment specialist. After the transfer, Adams continued to live in Houston and
commuted each day to and from Bryan. Primarily because Adams did not own a
reliable car of his own, Goodyear allowed him to use a one-ton GMC pickup truck
it owned to travel between Houston and Bryan. This extended use by an employee
of a company truck was not exactly routine, but neither was it unusual. 
          Goodyear did not hire Adams as a driver; nevertheless, once or twice a week
Adams dropped off or picked up tires at the Houston shop on his way home from
Bryan in the evenings or on the way back to Bryan the next morning. When he had
a delivery or pick-up, Adams was “on the clock” for Goodyear until he either dropped
the tires off at the Houston shop in the evening or arrived at the Houston shop in the
morning to pick up tires. If he was making a delivery or a pick-up, Adams was paid
for the driving time. But whether he was paid for the driving time or not, Adams
made the four-hour round-trip commute each day he reported for work, and Goodyear
was aware of this. In addition, Goodyear required Adams to carry a pager at all times.
          Adams normally worked five to six days a week, roughly 10 hours per day,
plus the four hour drive each day. As noted, he was only paid while driving between
the two cities when he had to pick up or deliver tires. The week preceding the
accident was typical for Adams—he had accumulated approximately 66 hours on the
clock, including one delivery day, and had logged another 20 hours commuting, for
which he was not paid.


 
          On February 26, 1999, Adams left Bryan in the late afternoon and attempted
to deliver tires to the Houston shop, where occasionally someone would wait for him
after shop hours, but the store was closed. Adams picked up some Chinese take-out,
drove to this father’s house, had supper and a few beers, then went to sleep. At about
3:00 a.m., Adams awakened and left the house in the Goodyear truck. He intended
to stop at a convenience store to get some cigarettes for his father, then drive home,
change clothes, and head for the Houston shop on his way to Bryan to begin work at
6:00 a.m. Just minutes after leaving his father’s house, Adams caused a traffic
accident when he fell asleep at the wheel and crossed the center stripe into oncoming
traffic. He crashed his truck into Mayes’s car, severely injuring Mayes. Adams, too,
was injured and unable to work for months. While Adams was absent on sick leave,
he collected workers compensation insurance payments. Two months later, Goodyear
fired Adams for using the truck in an unauthorized manner. 
          Mayes sued Goodyear under the theory of respondeat superior, contending that
Adams was within the course and scope of his employment when the accident
happened. In his petition, Mayes contended Goodyear was negligent for (1) allowing
Adams to drive, (2) not restricting access to company vehicles, and (3) not creating
and enforcing safety rules regarding company vehicles. Mayes also contended that
Goodyear was grossly negligent for permitting Adams to drive its truck after he had
worked so many hours that week, been awake for 23 hours, and been drinking
alcohol. He sought to recover $750,000 in damages and exemplary damages from
Adams and Goodyear. 
          Goodyear filed a hybrid traditional/no-evidence motion for summary judgment
in which it contended Adams was not in the course and scope of his employment
when the accident occurred, and in which it characterized the remainder of Mayes’s
claims against it as an improper claim for negligent entrustment. The trial court
rendered summary judgment for Goodyear, severed the cause, reconsolidated the two
cases, then deconsolidated them, making the summary judgment final for purposes
of appeal.
Analysis
          In issues one and two, Mayes contends that genuine issues of material fact
precluded summary judgment for Goodyear on both claims—respondeat superior and
negligent entrustment. We note at the outset that, although Mayes’s pleadings do not 
specifically include a claim for negligent entrustment, he did not object to the
variance between his pleadings and Goodyear’s characterization of his claims and he
argues on appeal that fact issues exist in regard to negligent entrustment. 
Accordingly, we treat this unpleaded claim as having been tried by consent. See
Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991) (noting that
parties may try an issue by consent in summary judgment proceedings).
          Standard of Review
          After adequate time for discovery, a party may move for summary judgment
on the ground that there is no evidence of one or more essential elements of a claim
or defense on which an adverse party would have the burden of proof at trial. Tex.
R. Civ. P. 166a(i); Brewer & Pritchard, P.C. v. Johnson, 7 S.W.3d 862, 866 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). The motion must specify which essential
elements of the opponent’s claim or defense lack supporting evidence. See Brewer
& Pritchard, 7 S.W.3d at 866-67. Once the party seeking the no-evidence summary
judgment files a proper motion, the respondent must bring forth evidence that raises
a fact issue on the challenged elements. See Jackson v. Fiesta Mart, Inc., 979 S.W.2d
68, 71 (Tex. App.—Austin 1998, no pet.). The party with the burden of proof at trial
thus has the burden of proof in the summary judgment proceeding. Flameout Design
& Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). The respondent need not “marshal its
proof” as for trial but need only “point out” evidence that raises a fact issue on the
challenged elements. See Howell v. Hilton Hotels Corp., 84 S.W.3d 708, 715 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).
          The standard of review in an appeal from a traditional summary judgment
requires a defendant who moved for a summary judgment on the plaintiff’s causes of
action (1) to show there is no genuine issue of material fact as to at least one element
of each of the plaintiff’s causes of action or (2) to establish each element of the
defendant’s affirmative defense. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
          In reviewing a traditional or a no-evidence summary judgment, we assume all
the evidence favorable to the nonmovant is true, indulge every reasonable inference
in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. Ernst
& Young, L.L.P. v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). 
When, as here, the trial court’s summary judgment order does not specify the ground
or grounds on which summary judgment is rendered, we will affirm the summary
judgment if any of the grounds stated in the motion is meritorious. Id. (citing Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989)).
          Respondeat Superior
          In issue one, Mayes contends there is a genuine issue of fact concerning
whether Adams was acting within the course and scope of his duty, thus subjecting
Goodyear to vicarious liability. Generally, to impose vicarious liability on an
employer under the doctrine of respondeat superior for the tortious conduct of an
employee, the conduct must have occurred within the course and scope of the
employee’s general authority and must have been undertaken to further the
employer’s business and to accomplish the objective for which the employee was
hired. Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 493 (Tex. App.—Fort
Worth 2002, no pet.); Soto v. El Paso Natural Gas Co., 942 S.W.2d 671, 680 (Tex.
App.—El Paso 1997, writ denied). Tortious conduct is within the scope of
employment when it is of the same general nature as the authority given an employee
or is incidental to authorized conduct. Wrenn, 73 S.W.3d at 493; Soto, 942 S.W.2d
at 681. 
          Goodyear offers a number of facts tending to show Adams was on a personal
errand, and thus not in the course and scope of his employment duties. We, however,
must view only the evidence and inferences favorable to Mayes, the nonmovant. See
Ernst & Young, 51 S.W.3d at 577. While there is conflicting evidence in the record
as to when Adams’ work day began and ended, Mayes provided evidence that Adams
made deliveries at Goodyear’s request and carried a pager at all times. The record
also shows that Adams had responsibility and control over the Goodyear tires in his
truck when the accident happened and intended to deliver them to the Houston shop
before reporting to work in Bryan on the morning of the accident. Goodyear
terminated Adams for his unauthorized use of the truck. Adams, however, testified
in deposition as follows:
          Q.      And, sir, how did you come to be driving a Goodyear vehicle on that
date?
 
          A.      They allowed me transportation to — back and forth to Bryan, Texas.
 
          Q.      Okay. So did they allow you to use that vehicle?
 
          A.      Yes.
 
          Q.      Did they allow you to use that vehicle after work?
 
          A.      They never gave me any stipulations when or where or how I should use
it.
          . . . .
 
          Q.      Was your use of that vehicle limited to the time that you were at work?
 
          A.      No.
 
          Q.      Were you allowed to take that vehicle home with you?
 
          A.      Yes.
 
          Q.      And when you took that vehicle home with you, was there any – did
they tell you “you can’t stop at the store,” “you can’t . . . .”
 
          A.      No.

We consider the foregoing evidence sufficient to raise a genuine issue of material fact
regarding whether Adams was acting within the course and scope of his employment,
despite being on a personal errand, i.e., that Adams (1) was driving a Goodyear truck
filled with Goodyear tires he had undertaken to deliver after leaving Bryan the
previous evening and before returning the next morning, and was “on the clock”
when he was making deliveries; (2) had a delivery to make that morning because he
had been unable to deliver the tires the night before; (3) was available via pager 24
hours a day; and (4) was not restricted in any way from using the truck for personal
business.
          The dissenting opinion identifies several cases in which an employee has been
found not to be within the course and scope of his employment when attending to
personal business, and would hold as a matter of law that Adams was on a personal
errand. There are, however, cases inapposite to those cited by the dissenting opinion. 
When the evidence shows that a vehicle was owned by an employer but driven by the
employee, a rebuttable presumption arises that the driver was acting within the scope
of his employment when the accident occurred. Gebert v. Clifton, 553 S.W.2d 230,
231 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ dism’d). Although an
employee is not customarily within the course and scope of his employment when
going to or from work, one exception is when the employee has undertaken a special
mission at the employer’s direction. Id.; accord Chevron, U.S.A., Inc. v. Lee, 847
S.W.2d 354, 356 (Tex. App.—El Paso 1993, no writ). Moreover, an employee who
undertakes a task at his employer’s direction or in the furtherance of his employer’s
business may be found to be acting in the course and scope of his employment even
if the employee attends to personal business as well. See, e.g., Best Steel Bldgs., Inc.
v. Hardin, 553 S.W.2d 122, 128 (Tex. Civ. App.—Tyler 1977, writ ref’d n.r.e.).
          What is more important than which line of cases controls here, however, is that
the question of whether an employee is acting within the course and scope of his
employment is not usually a question of law. Rather, it is generally a fact question
for the jury, particularly when more than one inference may be drawn from the
evidence.


 Coleman v. Donato, 559 S.W.2d 860, 862 (Tex. Civ. App.—Houston
[14th Dist.] 1976, writ dism’d) (“The totality of the circumstances in this case
convinces us, therefore, that there was a fact issue as to whether Coleman was acting
in the course and scope of his employment with Nottingham when the accident
occurred.”); accord Kulm v. Jenkins, 557 S.W.2d 149, 153 (Tex. Civ.
App.—Amarillo 1977, writ ref’d n.r.e.) (“There being some evidence of probative
force that Kulms was in the scope of his employment at the time of the collision, the
issue was for the jury, and, the evidence on the issue being conflicting, the
determination of the fact was for the jury.”) (citations omitted); Texas & P. Ry. Co.
v. Crown, 220 S.W.2d 294, 297 (Tex. Civ. App.—Eastland, 1949, writ ref’d n.r.e.)
(“The question whether a servant was acting within the scope of his employment at
the time of the injury complained of may be a question of fact or of law. Where the
evidence is conflicting or more than one inference can be drawn therefrom, it is for
the jury to determine, under appropriate instructions from the court, whether the
servant was acting within the scope of his employment at the time of the injury
complained of.”).
          There is also a second, independent basis for our conclusion. In a deposition
Adams gave on January 15, 2002, when he was asked whether he received any
income during the two months he was off work, Adams responded that he received
workers’ compensation and that someone at Goodyear had helped him fill out the
forms to obtain these payments. Mayes reiterates this in his appellate brief; in its
appellate brief, Goodyear does not address the issue of workers’ compensation
payments at all. An insurance carrier is liable for compensation for an employee’s
injury without regard to fault or negligence if, at the time of injury, the employee is
subject to coverage, and if the injury arises out of and in the course and scope of
employment. Tex. Lab. Code Ann. § 406.031(a)(1),(2) (Vernon 1996) (emphasis
added); see also Evans v. Illinois Employers Ins. of Wausau, 790 S.W.2d 302, 303
(Tex. 1990). We consider Goodyear’s authorization of workers’ compensation
payments to Adams for the injuries he sustained in the accident sufficient to raise a
genuine issue of material fact concerning whether he was acting in the course and
scope of his employment.
          We sustain Mayes’s first issue.
          Negligent Entrustment
          An owner who entrusts his vehicle to a person who he knows or should know
is an incompetent driver is guilty of negligent entrustment. Louis Thames Chevrolet
Co. v. Hathaway, 712 S.W.2d 602, 604 (Tex. App.—Houston [1st Dist.] 1986, no
writ). To recover under a negligent entrustment theory, the plaintiff must prove that: 
(1) the owner entrusted the vehicle to an incompetent or reckless driver; (2) the owner
knew or should have known that the driver was incompetent or reckless; (3) the driver
was negligent on the occasion in question; and (4) the driver’s negligence
proximately caused the accident. Id. 
          It is not disputed that Adams was negligent and that his negligence was the
proximate cause of the accident. Goodyear contends it checked Adams’ driving
record before hiring him and discovered one ticket for driving without insurance and
one minor collision that did not result in property damage or physical injuries. 
Goodyear appears to argue that Adams’s driving record, as a matter of law, proves
that he was not a reckless driver. A plaintiff, however, is not limited solely to the
driver’s previous record to establish negligent entrustment. Hathaway, 712 S.W.2d
at 604. The condition, state, or situation of the entrustee at the time of the
entrustment may be given equal or greater credence in determining whether the
circumstances of the entrustment constituted negligence. Id. 
          Here, Mayes’s central contention is that Adams was too tired to drive safely,
and that Goodyear should have known he was too tired because it was aware of his
relatively long 10-hour workdays, plus the additional burden of his daily four-hour
round-trip commute between Houston and Bryan each day he reported to work,
including the day of the accident and the preceding day, and because Goodyear was
aware that Adams was obligated to make a delivery in Houston the day of the
accident. In other words, Mayes contends that Adams may have been incompetent
to drive because of insufficient sleep, and Goodyear was aware of this possibility,
thus raising the possibility of negligent entrustment. See Hathaway, 712 S.W.2d at
604 (condition of entrustee may determine whether entrustment was negligent). 
Although the number of hours Adams worked the previous week is disputed, the 66.5
hours worked that were acknowledged by Goodyear (including one after-hours
delivery that week), together with the four-hour commute time and Adams’ work and
driving schedule on the day before and the day of the accident, are sufficient to raise
a genuine issue of material fact as to whether Goodyear was negligent in entrusting
Adams with the truck, particularly when the accident resulted from Adams’ having
fallen asleep while driving. 
          We sustain Mayes’s second issue.
Conclusion
          We reverse the trial court’s judgment and remand the cause for further
proceedings.


                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.

Justice Jennings, dissenting.