**Noble GINTHER, III, and Lisa Ginther, Each Individually and a/n/f Fallon Ginther, Deceased, Appellants,**

v.

**DOMINO'S PIZZA, INC., Appellee.**

No. 14–01–00648–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 8, 2002.

George M. Kirk, Jr., Matthew Sean Parish, Michael Chad Gerke, Houston, for Appellants.

Michael Hendryx, Houston, for Appellee.

Panel consists of Justices HUDSON, FOWLER, and DUGGAN.*

## OPINION

WANDA McKEE FOWLER, Justice.

This is a wrongful death suit brought against Domino's Pizza, Inc.[1] ("Domino's") by appellants, Lisa and Noble Ginther, III ("the Ginthers"), whose teenage daughter died in a car accident with the car of an off-duty Domino's delivery driver. On appeal, the Ginthers argue that the trial court erred in granting Domino's motion for summary judgment because (1) Domino's had a duty to ensure the mechanical reliability of the vehicles used to deliver its pizza products; (2) Domino's had a duty to confirm that its pizza delivery drivers had liability insurance on their vehicles; and (3) Domino's owed a duty as a matter of law. We affirm the judgment of the trial court.

### BACKGROUND

The Ginthers' daughter was killed in an auto accident when the vehicle she was riding in struck a stalled car[2] on a freeway. The driver and owner of the stalled car, Quincy Howard, Jr. was an off-duty Domino's employee. Domino's delivery personnel use their own vehicles to deliver pizzas. Domino's performs a cursory vehicle inspection of their vehicles to verify insurance coverage and to check items such as brakes, lights, and tires. Domino's

---

* Retired Justice Lee Duggan, Jr. participating by assignment.

1. In its brief to this court, appellee identifies itself as Domino's Pizza, LLC, incorrectly sued as Domino's Pizza, Inc. There is no indication in the record that Domino's previously raised this issue.

2. The Ginthers state the car "stalled" and Domino's states the car "became inoperable." The record does not contain any evidence as to why Howard's car was stopped on the freeway.

inspected Howard's car three months prior to the accident, finding that Howard had insurance coverage and his car had one broken tail light.

On the night of the accident, Howard left work at 11:30 p.m. He later picked up some friends and was driving them home when his car stalled. The accident occurred at approximately 1:15 a.m., almost two hours after Howard left Domino's. Howard stated in his summary judgment affidavit that he conducted no business on behalf of Domino's after leaving the store at 11:30 p.m. and that his trip was strictly personal in nature.

The Ginthers brought a negligence cause of action individually and on behalf of their minor daughter against Domino's. Domino's filed a motion for summary judgment urging that no basis for *respondeat superior* liability existed and that Domino's owed no duty to the Ginthers. The trial court granted Domino's motion, and this appeal followed.

DISCUSSION

**1. Standard of Review**

██ In a motion for summary judgment, the movant has the burden to show, with competent proof, that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); Tex.R. Civ. P. 166a(c). In deciding whether a material fact issue exists, we resolve every reasonable inference in favor of the non-movant and take all evidence favorable to the non-movant as true. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Nixon*, 690 S.W.2d at 548–49. Summary judgment for the defendant is proper only if, as a matter of law, plaintiff could not succeed on any theory pled. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). When the trial court does not specify the grounds upon which the summary judgment was granted, the reviewing court will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

**2. The Issues**

*a. Is Domino's liable under a theory of respondeat superior?*

██ The essential elements of a negligence cause of action are (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The existence of a legal duty is the threshold requirement in a negligence case. *Id.* As a general rule, there is no duty to control the conduct of another. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983). However, employers may be held liable for the negligent acts of their employees under a theory of *respondeat superior* if the employee's actions are within the course and scope of their employment. *Mata v. Andrews Transp., Inc.*, 900 S.W.2d 363, 366 (Tex.App.-Houston [14th Dist.] 1995, no writ). In order to meet this exception, the employee's act must be (1) within the employee's general authority, (2) in furtherance of the employer's business, and (3) taken to accomplish the object for which the employee was hired. *Id.*

██ Here, it is undisputed that Howard's shift had ended and that he left work almost two hours before the accident. Howard's affidavit, included in Domino's summary judgment evidence, recited that the purpose of his trip was strictly personal and unrelated to his employment with Domino's. Therefore, Howard was not acting within the general authority granted to him by Domino's at the time of the accident, and his actions were not in fur-

therance of Domino's business. Finally, the object for which Howard was hired was to deliver pizza—not to drive around with his friends. Because Howard's actions fall outside the course and scope of his employment, we hold his alleged negligence cannot be attributed to Domino's under a theory of *respondeat superior*.

### b. Did Domino's owe a legal duty to the Ginthers?

The Ginthers also assert that (1) Domino's has a duty to check the mechanical reliability of its drivers' vehicles, and (2) Domino's has a duty to confirm that its drivers maintain liability insurance on the vehicles used to deliver Domino's product.[3] The Ginthers claim these duties exist because it is foreseeable that Domino's practice of hiring youthful drivers who use their own vehicles will result in personal injury proximately caused by mechanical failure. Alternatively, the Ginthers allege that Domino's voluntarily assumed these duties. However, the Ginthers do not cite any evidentiary or legal authority to support such an expansion of employer liability.

### (i) Domino's did not have a common-law duty to the Ginthers.

As a general rule, there is no duty to control the conduct of another. *Otis*, 668 S.W.2d at 309. An employer is only liable for its employees' off-duty torts when they are committed on the employer's premises or with the employer's chattels. *Id.* Here, Howard was off duty, and it is undisputed that Howard was not using Domino's chattels—he was driving his own car at the time of the accident. And, the accident did not take place on Domino's property; it occurred on a public freeway.

Therefore, a duty will be imposed on Domino's only if the facts of this case fit within the narrow exception carved out by *Otis*.

In *Otis*, the Supreme Court recognized that an employer does have a duty to third parties when, because of an employee's incapacity, the employer exercises control over the employee. *Id.* at 311. The linchpin of the *Otis* duty of care is control. *See Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993); *Greater Houston Transp. Co.*, 801 S.W.2d at 526. *Otis* involved an employee who had drinking problems; he drank even during work, a fact known to fellow workers and at least one supervisor. *Otis*, 668 S.W.2d at 308. One evening, the employee was sent home early because it was apparent to his co-worker and supervisor that he was intoxicated. Testimony showed that the employee's alcohol content was so high his condition would have been apparent to his co-worker and supervisor. *Id.* The supervisor told the employee to go home, yet he allowed the employee to drive himself. A fatal accident occurred not long after the employee left work. The Court held that the employer assumed a duty by exercising control. It exercised control when, recognizing the employee's incapacity, its supervisor sent him home. *Id.* at 311. The court held that a fact issue existed as to whether the Otis supervisor had acted as a reasonably prudent employer when he told the employee to go home rather than keeping him at the plant, having someone drive him home, or having someone pick him up from the plant. *Id.*

Domino's distinguishes its situation from *Otis*. It contends that, as an employer, it had no right to control Howard's behavior after he clocked out at 11:30. The Ginthers point to no evidentiary or legal authority tending to show that Domino's had

---

**3.** The Ginthers treat this issue very summarily in their brief; we address it only out of an abundance of caution.

the authority to control its employees' actions relating to vehicle maintenance or insurance coverage while off duty. Nor do they point to any evidence tending to show that Domino's had actual knowledge of mechanical failure in Howard's car or a lack of insurance coverage. We find Domino's does not have a duty at common law to determine the mechanical reliability of the vehicles used by its delivery drivers or to ensure that its drivers maintain liability insurance on their vehicles.

### (ii) We decline to impose a new duty.

▮▮▮▮ Alternatively, the Ginthers ask us to impose a new duty on employers. Specifically, they argue that Domino's had a duty to inspect its drivers' vehicles to determine their mechanical reliability and to ensure that its drivers carried insurance when making deliveries. As we explain below, we decline to expand employer liability in such a fashion. Deciding whether to impose a new common-law duty involves complex considerations of public policy including "social, economic, and political questions, and their application to the particular facts at hand." *Mitchell*, 786 S.W.2d at 662 (quoting 1 TEXAS TORTS AND REMEDIES 1.03[2](b) (1989)). Several factors are considered in establishing a new duty—including the extent of the risk involved and the foreseeability and likelihood of injury. *Graff v. Beard*, 858 S.W.2d at 920 (citing *Greater Houston Transp. Co.*, 801 S.W.2d at 525). These factors must be weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Id.*

The Ginthers assert that it was foreseeable that Domino's drivers' vehicles would cause accidents as a result of mechanical failure. However, the Ginthers fail to cite any evidence supporting their assertion.

The youthfulness of the drivers and their relatively low wages are insufficient to make it foreseeable that necessary mechanical repairs would not be undertaken or that insurance coverage would not be maintained. Additionally, there is nothing in the record to indicate the cause of Howard's stalled car. Because of the preceding facts, we cannot agree that Domino's could have foreseen that mechanical failure of Howard's car would cause an accident. Furthermore, the record does not contain any evidence relating to the likelihood of a car accident caused by mechanical failure. As for the risk and extent of injury, the use of a motor vehicle almost invariably involves some risk of property damage, personal injury, or death, and the Ginthers point to no evidence tending to show that this risk was increased by Howard's employment with Domino's. In fact, if anything, one could assume that because they receive wages from Domino's, the drivers would be more likely (rather than less likely) to be able to afford, and therefore have, insurance coverage.

Although the utility of pizza delivery is subjective and difficult to quantify, the burden placed on employers like Domino's would be enormous. Employers might have to inspect their employees' vehicles constantly, because mechanical problems could arise at any time. And because a driver can lose insurance coverage at any time, under the proposed duty, employers would have to confirm coverage for each driver on a daily basis.

Many businesses potentially could be subjected to this burden, for many employees are required to use their cars in their jobs—lawyers, accountants, computer specialists, sales persons, nurses or physical and occupational therapists visiting homes of clients, just to name a few. If we were to hold that Domino's was required to ensure the mechanical viability of its em-

ployees' vehicles and to ensure their insurance coverage at all times, many employers could be subject to this same duty. The magnitude of this burden is enormous. Yet, the Ginthers fail to cite to any authority that would support such an expansion of employer liability or to give us any evidence supporting the imposition of this burden.

Under the proposed duty, liability would be imposed regardless of whether the vehicle was being used for business or personal use at the time of the accident, and regardless of whether the employee was in the course and scope of his employment. The consequence of placing this burden on an employer could be to make it an insurer of its employees 24–hours–a–day. The Ginthers provide no legal authority from any jurisdiction for such an expansion of employer liability. Nor do they suggest any logical place to draw a line limiting liability. We decline to impose this duty.

### (iii) Domino's did not voluntarily assume a duty to the Ginthers.

■ The Ginthers also contend that Domino's voluntarily assumed a duty to inspect its drivers' personal vehicles to determine their mechanical reliability and to confirm that employees had insurance coverage. As stated above, we disagree. The Ginthers have not cited, and we have not found, any case in which a court has imposed liability based on facts such as these. The closest case law is *Otis Engineering* and its progeny, but even *Otis* is much more restrictive than this fact scenario.

Under *Otis*, the employer assumed a duty over its employee's off-duty conduct because it was aware of his incapacity, yet affirmatively controlled the employee by suggesting that he drive home drunk. *See Otis*, 668 S.W.2d at 311. In *Otis*, the

employee's disability was obvious, and it was acknowledged by the employer. *Id.* at 308. But here, Howard's car did not become incapacitated until nearly two hours *after* he left work. Consequently, Domino's could not have been "aware" of any incapacity or disability.

Moreover, not even the Restatement of Torts—which frequently recognizes duties before many states adopt them—would support a duty under these facts. *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 859–60 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). The section of the Restatement that the Ginthers cite is section 324 A, RESTATEMENT (SECOND) OF TORTS (1965), but the examples in the Restatement are more narrow than the facts here:

> The A telephone company employs B to inspect its telephone poles. B negligently inspects and approves a pole adjoining the public highway. Because of its defective condition, the pole falls upon and injures a traveler upon the highway. B is subject to liability to the traveler.

RESTATEMENT (SECOND) OF TORTS § 324 A cmt. d, illus. 2 (1965).

Likewise, each of the other examples under the section involves an affirmative negligent act by a party by which they undertook to repair something that was broken or to render a service. *See id.* at illus. 1, 3. We do not have that here.

The only evidence the Ginthers point to in support of an alleged assumption of duty is the cursory inspection Domino's performed on Howard's car three months before the accident. Qualitatively, this is not the same sort of undertaking contemplated in the Restatement. Furthermore, these routine inspections only cover problems that a state inspection would detect. Domino's is entitled to assume that its employees are following the law and that their cars would pass the routine safety

inspections as required by state law. We do not find that this inspection constitutes an affirmative act of control, as contemplated by *Otis.* Consequently, we find that Domino's did not voluntarily assume a duty to the Ginthers.

We overrule this issue.

### c. Did the trial court err in granting Domino's motion for summary judgment?

In their final issue on appeal, the Ginthers assert that the trial court erred in granting Domino's motion for summary judgment, essentially finding as a matter of law that Domino's owed no duty. Because the Ginthers could not succeed on any of the theories pleaded, we find that summary judgment for Domino's was proper. We overrule this complaint.

In short, we recognize the tragedy the Ginthers have had and their desire to impose liability; however, the law does not support the imposition of a duty on Domino's. The judgment of the trial court is affirmed.