**Patrick MAYES, Appellant,**

v.

**GOODYEAR TIRE AND RUBBER COMPANY, Appellee.**

**No. 01–03–00157–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 2004.

Rehearing Overruled Sept. 24, 2004.

Denise Wells Novotny, Davenport, Goranson, L.L.P., Valorie W. Davenport, Davenport Legal Group, Houston, TX, for Appellant.

Robert C. Scruggs, King, LeBlanc & Bland, P.L.L.C., Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

## OPINION

EVELYN V. KEYES, Justice.

This is an appeal of a take-nothing summary judgment rendered in favor of defen-

dant/appellee, Goodyear Tire & Rubber Co., against plaintiff/appellant, Patrick Mayes, in his personal injury suit against Goodyear and co-defendant Corte Adams, one of Goodyear's employees. The trial court granted Goodyear's motion for summary judgment on the causes of action for vicarious liability and negligent entrustment, then severed the cause from the suit against Adams. In two issues, Mayes challenges the rendition of summary judgment, contending there are genuine issues of material fact precluding summary judgment on either cause of action. We agree with this contention; accordingly, we reverse.

### Facts

Goodyear hired Adams in April 1998 to work as a service technician—changing tires and fixing flats—in its Houston, Texas shop. In September 1998, Adams transferred to the Bryan, Texas shop, which specializes as a commercial truck tire center; he was trained and promoted to the position of truck alignment specialist. After the transfer, Adams continued to live in Houston and commuted each day to and from Bryan. Primarily because Adams did not own a reliable car of his own, Goodyear allowed him to use a one-ton GMC pickup truck it owned to travel between Houston and Bryan. This extended use by an employee of a company truck was not exactly routine, but neither was it unusual.

Goodyear did not hire Adams as a driver; nevertheless, once or twice a week Adams dropped off or picked up tires at the Houston shop on his way home from Bryan in the evenings or on the way back to Bryan the next morning. When he had a delivery or pick-up, Adams was "on the clock" for Goodyear until he either dropped the tires off at the Houston shop in the evening or arrived at the Houston shop in the morning to pick up tires. If he was making a delivery or a pick-up, Adams was paid for the driving time. But whether he was paid for the driving time or not, Adams made the four-hour round-trip commute each day he reported for work, and Goodyear was aware of this. In addition, Goodyear required Adams to carry a pager at all times.

Adams normally worked five to six days a week, roughly 10 hours per day, plus the four hour drive each day. As noted, he was only paid while driving between the two cities when he had to pick up or deliver tires. The week preceding the accident was typical for Adams—he had accumulated approximately 66 hours on the clock, including one delivery day, and had logged another 20 hours commuting, for which he was not paid.[1]

On February 26, 1999, Adams left Bryan in the late afternoon and attempted to deliver tires to the Houston shop, where occasionally someone would wait for him after shop hours, but the store was closed. Adams picked up some Chinese take-out, drove to this father's house, had supper and a few beers, then went to sleep. At about 3:00 a.m., Adams awakened and left the house in the Goodyear truck. He intended to stop at a convenience store to get some cigarettes for his father, then drive home, change clothes, and head for

---

1. In his brief, Mayes contends Adams had worked more than 100 hours in the preceding eight days, and had been awake for 23 hours straight. Neither of these contentions is supported by the record. Adams' supervisor testified in deposition that Adams had worked 66.5 hours during the week in question, and she provided the work records for the relevant time period. Adams confirmed this in his deposition; he also testified he had gone to bed around 10:00 p.m. the night before and had slept for four to five hours before he started the trip during which the accident occurred.

the Houston shop on his way to Bryan to begin work at 6:00 a.m. Just minutes after leaving his father's house, Adams caused a traffic accident when he fell asleep at the wheel and crossed the center stripe into oncoming traffic. He crashed his truck into Mayes's car, severely injuring Mayes. Adams, too, was injured and unable to work for months. While Adams was absent on sick leave, he collected workers compensation insurance payments. Two months later, Goodyear fired Adams for using the truck in an unauthorized manner.

Mayes sued Goodyear under the theory of respondeat superior, contending that Adams was within the course and scope of his employment when the accident happened. In his petition, Mayes contended Goodyear was negligent for (1) allowing Adams to drive, (2) not restricting access to company vehicles, and (3) not creating and enforcing safety rules regarding company vehicles. Mayes also contended that Goodyear was grossly negligent for permitting Adams to drive its truck after he had worked so many hours that week, been awake for 23 hours, and been drinking alcohol. He sought to recover $750,000 in damages and exemplary damages from Adams and Goodyear.

Goodyear filed a hybrid traditional/no-evidence motion for summary judgment in which it contended Adams was not in the course and scope of his employment when the accident occurred, and in which it characterized the remainder of Mayes's claims against it as an improper claim for negligent entrustment. The trial court rendered summary judgment for Goodyear, severed the cause, reconsolidated the two cases, then deconsolidated them, making the summary judgment final for purposes of appeal.

## Analysis

In issues one and two, Mayes contends that genuine issues of material fact precluded summary judgment for Goodyear on both claims—respondeat superior and negligent entrustment. We note at the outset that, although Mayes's pleadings do not specifically include a claim for negligent entrustment, he did not object to the variance between his pleadings and Goodyear's characterization of his claims and he argues on appeal that fact issues exist in regard to negligent entrustment. Accordingly, we treat this unpleaded claim as having been tried by consent. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991) (noting that parties may try an issue by consent in summary judgment proceedings).

### *Standard of Review*

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Brewer & Pritchard, P.C. v. Johnson,* 7 S.W.3d 862, 866 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The motion must specify which essential elements of the opponent's claim or defense lack supporting evidence. *See Brewer & Pritchard,* 7 S.W.3d at 866–67. Once the party seeking the no-evidence summary judgment files a proper motion, the respondent must bring forth evidence that raises a fact issue on the challenged elements. *See Jackson v. Fiesta Mart, Inc.,* 979 S.W.2d 68, 71 (Tex.App.-Austin 1998, no pet.). The party with the burden of proof at trial thus has the burden of proof in the summary judgment proceeding. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.]

1999, no pet.). The respondent need not "marshal its proof" as for trial but need only "point out" evidence that raises a fact issue on the challenged elements. *See Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 715 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

■ The standard of review in an appeal from a traditional summary judgment requires a defendant who moved for a summary judgment on the plaintiff's causes of action (1) to show there is no genuine issue of material fact as to at least one element of each of the plaintiff's causes of action or (2) to establish each element of the defendant's affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995).

■ In reviewing a traditional or a no-evidence summary judgment, we assume all the evidence favorable to the nonmovant is true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in favor of the nonmovant. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001). When, as here, the trial court's summary judgment order does not specify the ground or grounds on which summary judgment is rendered, we will affirm the summary judgment if any of the grounds stated in the motion is meritorious. *Id.* (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989)).

### Respondeat Superior

■ In issue one, Mayes contends there is a genuine issue of fact concerning whether Adams was acting within the course and scope of his duty, thus subjecting Goodyear to vicarious liability. Generally, to impose vicarious liability on an employer under the doctrine of respondeat superior for the tortious conduct of an employee, the conduct must have occurred within the course and scope of the employ-

ee's general authority and must have been undertaken to further the employer's business and to accomplish the objective for which the employee was hired. *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 493 (Tex.App.-Fort Worth 2002, no pet.); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 680 (Tex.App.-El Paso 1997, writ denied). Tortious conduct is within the scope of employment when it is of the same general nature as the authority given an employee or is incidental to authorized conduct. *Wrenn*, 73 S.W.3d at 493; *Soto*, 942 S.W.2d at 681.

Goodyear offers a number of facts tending to show Adams was on a personal errand, and thus not in the course and scope of his employment duties. We, however, must view only the evidence and inferences favorable to Mayes, the nonmovant. *See Ernst & Young*, 51 S.W.3d at 577. While there is conflicting evidence in the record as to when Adams' work day began and ended, Mayes provided evidence that Adams made deliveries at Goodyear's request and carried a pager at all times. The record also shows that Adams had responsibility and control over the Goodyear tires in his truck when the accident happened and intended to deliver them to the Houston shop before reporting to work in Bryan on the morning of the accident. Goodyear terminated Adams for his unauthorized use of the truck. Adams, however, testified in deposition as follows:

Q. And, sir, how did you come to be driving a Goodyear vehicle on that date?

A. They allowed me transportation to—back and forth to Bryan, Texas.

Q. Okay. So did they allow you to use that vehicle?

A. Yes.

Q. Did they allow you to use that vehicle after work?

A. They never gave me any stipulations when or where or how I should use it.

. . . .

Q. Was your use of that vehicle limited to the time that you were at work?

A. No.

Q. Were you allowed to take that vehicle home with you?

A. Yes.

Q. And when you took that vehicle home with you, was there any—did they tell you "you can't stop at the store," "you can't. . . ."

A. No.

We consider the foregoing evidence sufficient to raise a genuine issue of material fact regarding whether Adams was acting within the course and scope of his employment, despite being on a personal errand, *i.e.,* that Adams (1) was driving a Goodyear truck filled with Goodyear tires he had undertaken to deliver after leaving Bryan the previous evening and before returning the next morning, and was "on the clock" when he was making deliveries; (2) had a delivery to make that morning because he had been unable to deliver the tires the night before; (3) was available via pager 24 hours a day; and (4) was not restricted in any way from using the truck for personal business.

 The dissenting opinion identifies several cases in which an employee has been found not to be within the course and scope of his employment when attending to personal business, and would hold as a matter of law that Adams was on a personal errand. There are, however, cases inapposite to those cited by the dissenting opinion. When the evidence shows that a vehicle was owned by an employer but driven by the employee, a rebuttable presumption arises that the driver was acting within the scope of his employment when the accident occurred. *Gebert v. Clifton,* 553 S.W.2d 230, 231 (Tex.Civ.App.-Houston [14th Dist.] 1977, writ dism'd). Although an employee is not customarily within the course and scope of his employment when going to or from work, one exception is when the employee has undertaken a special mission at the employer's direction. *Id.; accord Chevron, U.S.A., Inc. v. Lee,* 847 S.W.2d 354, 356 (Tex.App.-El Paso 1993, no writ). Moreover, an employee who undertakes a task at his employer's direction or in the furtherance of his employer's business may be found to be acting in the course and scope of his employment even if the employee attends to personal business as well. *See, e.g., Best Steel Bldgs., Inc. v. Hardin,* 553 S.W.2d 122, 128 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.).

 What is more important than which line of cases controls here, however, is that the question of whether an employee is acting within the course and scope of his employment is not usually a question of law. Rather, it is generally a fact question for the jury, particularly when more than one inference may be drawn from the evidence.[2] *Coleman v. Donaho,* 559 S.W.2d 860, 862 (Tex.Civ.App.-Houston [14th Dist.] 1977, writ dism'd) ("The totality of the circumstances in this case convinces us, therefore, that there was a fact issue as to whether Coleman was acting in the course and scope of his employment with Nottingham when the accident occurred.");

---

2. There is a pattern jury charge regarding whether an employee was acting in the scope of his employment. *See* 2 Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges PJC 7.6 (8th ed.2002). The existence of such a pattern charge indicates that this question is routinely asked of juries, thus supporting our contention that this issue is generally a question of fact.

*accord Kulms v. Jenkins,* 557 S.W.2d 149, 153 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.) ("There being some evidence of probative force that Kulms was in the scope of his employment at the time of the collision, the issue was for the jury, and, the evidence on the issue being conflicting, the determination of the fact was for the jury.") (citations omitted); *Texas & P. Ry. Co. v. Crown,* 220 S.W.2d 294, 297 (Tex. Civ.App.-Eastland, 1949, writ ref'd n.r.e.) ("The question whether a servant was acting within the scope of his employment at the time of the injury complained of may be a question of fact or of law. Where the evidence is conflicting or more than one inference can be drawn therefrom, it is for the jury to determine, under appropriate instructions from the court, whether the servant was acting within the scope of his employment at the time of the injury complained of.").

There is also a second, independent basis for our conclusion. In a deposition Adams gave on January 15, 2002, when he was asked whether he received any income during the two months he was off work, Adams responded that he received workers' compensation and that someone at Goodyear had helped him fill out the forms to obtain these payments. Mayes reiterates this in his appellate brief; in its appellate brief, Goodyear does not address the issue of workers' compensation payments at all. An insurance carrier is liable for compensation for an employee's injury without regard to fault or negligence if, at the time of injury, the employee is subject to coverage, and *if the injury arises out of and in the course and scope of employment.* TEX. LAB.CODE ANN. § 406.031(a)(1),(2) (Vernon 1996) (emphasis added); *see also Evans v. Illinois Employers Ins. of Wausau,* 790 S.W.2d 302, 303 (Tex.1990). We consider Goodyear's authorization of workers' compensation payments to Adams for the injuries he

sustained in the accident sufficient to raise a genuine issue of material fact concerning whether he was acting in the course and scope of his employment.

We sustain Mayes's first issue.

### Negligent Entrustment

 An owner who entrusts his vehicle to a person who he knows or should know is an incompetent driver is guilty of negligent entrustment. *Louis Thames Chevrolet Co. v. Hathaway,* 712 S.W.2d 602, 604 (Tex.App.-Houston [1st Dist.] 1986, no writ). To recover under a negligent entrustment theory, the plaintiff must prove that: (1) the owner entrusted the vehicle to an incompetent or reckless driver; (2) the owner knew or should have known that the driver was incompetent or reckless; (3) the driver was negligent on the occasion in question; and (4) the driver's negligence proximately caused the accident. *Id.*

 It is not disputed that Adams was negligent and that his negligence was the proximate cause of the accident. Goodyear contends it checked Adams' driving record before hiring him and discovered one ticket for driving without insurance and one minor collision that did not result in property damage or physical injuries. Goodyear appears to argue that Adams's driving record, as a matter of law, proves that he was not a reckless driver. A plaintiff, however, is not limited solely to the driver's previous record to establish negligent entrustment. *Hathaway,* 712 S.W.2d at 604. The condition, state, or situation of the entrustee at the time of the entrustment may be given equal or greater credence in determining whether the circumstances of the entrustment constituted negligence. *Id.*

Here, Mayes's central contention is that Adams was too tired to drive safely, and that Goodyear should have known he was

too tired because it was aware of his relatively long 10-hour workdays, plus the additional burden of his daily four-hour round-trip commute between Houston and Bryan each day he reported to work, including the day of the accident and the preceding day, and because Goodyear was aware that Adams was obligated to make a delivery in Houston the day of the accident. In other words, Mayes contends that Adams may have been incompetent to drive because of insufficient sleep, and Goodyear was aware of this possibility, thus raising the possibility of negligent entrustment. *See Hathaway*, 712 S.W.2d at 604 (condition of entrustee may determine whether entrustment was negligent). Although the number of hours Adams worked the previous week is disputed, the 66.5 hours worked that were acknowledged by Goodyear (including one after-hours delivery that week), together with the four-hour commute time and Adams' work and driving schedule on the day before and the day of the accident, are sufficient to raise a genuine issue of material fact as to whether Goodyear was negligent in entrusting Adams with the truck, particularly when the accident resulted from Adams' having fallen asleep while driving.

We sustain Mayes's second issue.

### Conclusion

We reverse the trial court's judgment and remand the cause for further proceedings.

Justice JENNINGS dissenting.

JENNINGS, Justice, dissenting.

Regarding negligence liability, Justice Holmes [1] wrote, "The general principle of our law is that loss from accident must lie where it falls, and this principle is not affected by the fact that a human being is the instrument of misfortune." [2] Because the undisputed facts of this case, as a matter of law, preclude appellant's negligence claim under the theories of respondeat superior and negligent entrustment, I respectfully dissent.

Corte Adams (Adams), an employee of appellee, Goodyear Tire and Rubber Company (Goodyear), fell asleep while driving a Goodyear truck, causing the truck to collide head-on with a car driven by appellant, Patrick Mayes (Mayes). In his sole issue, Mayes contends that the trial court erred in granting Goodyear's motion for summary judgment because "Goodyear failed to prove, as a matter of law, that Corte Adams was not acting within the course and scope of his employment" and "Goodyear was not entitled to Summary Judgment as to claims of negligent entrustment."

However, the controlling fact of this case is that, at the time of the collision, sometime after 3:00 a.m., Adams, after having had dinner, "a few beers," and several hours of sleep at his father's house, was driving the truck from his father's house to a convenience store to buy a package of cigarettes for his father.

### *Respondeat Superior*

Mayes sued Goodyear for negligence under the theory of respondeat superior, alleging that Adams was acting within the course and scope of his employment when he caused the truck to collide with Mayes's car.

As implied by Justice Holmes above, the existence of a legal duty is the threshold requirement in a negligence case. *Greater*

---

1. The Honorable Oliver Wendell Holmes, Jr., Justice of the United States Supreme Court, 1902–1932.

2. OLIVER WENDELL HOLMES, JR., THE COMMON LAW, p. 94 (Little, Brown & Co.1949).

*Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). As a general rule, there is no duty to control the conduct of another. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). However, under the theory of respondeat superior, an employer may be held liable for the negligent acts of its employee if the employee's actions are within the course and scope of their employment. *Ginther v. Domino's Pizza, Inc.,* 93 S.W.3d 300, 303 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). In order to meet this exception, the employee's act "must" be

(1) within the employee's general authority,

(2) in furtherance of the employer's business, and

(3) taken to accomplish the object for which the employee was hired.

*Id.*

In *Ginther,* a wrongful death case, the Ginthers' daughter was killed when the car in which she was a passenger collided with a stalled car on a freeway. *Id.* at 302. The driver of the stalled car was Quincy Howard, Jr., a Domino's pizza delivery man, who, on the night of the collision, left work at 11:30 p.m., picked up some friends, and was driving them home when his car stalled. *Id.* at 302–03. The undisputed summary judgment evidence showed that the purpose of Howard's trip was "strictly personal" and unrelated to his employment with Domino's. *Id.* at 303. The court noted that Howard was not acting within the general authority granted to him by Domino's at the time of the collision, his actions were not in furtherance of Domino's business, and "the object for which Howard was hired was to deliver pizza— not to drive around with his friends." *Id.* 303–04. Because Howard's actions fell outside the course and scope of his employment, the court held that his alleged negligence could not be attributed to Dom-

ino's under a theory of respondeat superior. *Id.* at 304.

Here, likewise, it is undisputed that Adams's 3:00 a.m. trip to the convenience store to buy cigarettes for his father— coming after dinner, "a few beers," and several hours of sleep at his father's house—was strictly personal. Even assuming that Adams had Goodyear's authority to use its truck for personal business, Adams' actions, at the time of the collision, were not in furtherance of Goodyear's business, and the object for which Adams was hired was to change, fix, and sometimes deliver tires—not to drive to a convenience store to buy cigarettes for his father.

The majority considers Adams' testimony that Goodyear never "gave [him] any stipulations when or where or how [he] could use [the truck]" sufficient to raise a material fact issue "regarding whether he was acting within the course and scope of his employment, despite being on a personal errand." However, even assuming that Goodyear placed no restrictions on Adams' use of the truck, that fact is not probative on the issues of whether Adams' action, at the time of the collision, was (1) in furtherance of Goodyear's business and (2) taken to accomplish the object for which Adams was hired—two essential elements of respondeat superior. *Id.* at 303.

Moreover, I respectfully disagree with the majority's conclusion that Adams' receipt of workers' compensation payments also raises a genuine issue of material fact about whether he was acting in the course and scope of his employment at the time of the collision. This fact is in no way probative on the issues of whether Adams' action, at the time of the collision, was (1) in furtherance of Goodyear's business and (2) taken to accomplish the object for which Adams was hired.

The undisputed and controlling fact remains that Adams' 3:00 a.m. trip from his father's house, after having had dinner, "a few beers," and several hours of sleep, to the convenience store to buy cigarettes for his father was strictly personal. Because Adams' strictly personal errand for his father fell outside the course and scope of his employment with Goodyear, I would hold that, as a matter of law, his alleged negligence cannot be attributed to Goodyear under the theory of respondeat superior.

### Negligent Entrustment

Mayes also seeks to hold Goodyear liable for Adams' actions under the theory of negligent entrustment. The basis of responsibility under the doctrine of negligent entrustment is the owner's own negligence in permitting its motor vehicle to "become a dangerous instrumentality by putting it into a driver's control *with knowledge of the potential danger existing by reason of the incompetence or reckless nature of the driver.*" *Green v. Tex. Elec. Wholesalers, Inc.*, 651 S.W.2d 4, 6–7 (Tex.App.-Houston [1st Dist.] 1982, writ dism'd by agrmt.) (citing *Mundy v. Pirie Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587, 590–91 (1947)) (emphasis added).

The well-established elements of an automobile owner's liability for negligent entrustment are:

(1) entrustment of a vehicle by the owner;

(2) to an unlicensed, incompetent, or reckless driver;

(3) that the owner knew or should have known to be unlicensed, incompetent, or reckless;

(4) that the driver was negligent on the occasion in question; and

(5) that the driver's negligence proximately caused the accident.

*Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex.1987). For entrustment to be a proximate cause, the entrustor should be shown to have been reasonably able to anticipate that an injury would result as a natural and probable result of the entrustment. *Id.*

In regard to the knowledge element, the majority concludes that Adams' 66.5 hour workweek prior to the collision "together with the four-hour commute time and Adams' work and driving schedule on the day before and the day of the accident, is sufficient to raise a genuine issue of material fact as to whether Goodyear was negligent in entrusting Adams with the truck, particularly when the accident resulted from Adams' having fallen asleep while driving."

Again, I respectfully disagree. These facts are not probative as to whether Goodyear knew or should have known that Adams was an incompetent or reckless driver. It does not logically follow that because Adams had a long workweek and commute time that Goodyear knew or should have known that Adams would wake up at 3:00 a.m. and attempt to drive Goodyear's truck on a personal errand while he was still tired. Because the evidence, favorable to Mayes, does not support a reasonable inference that Goodyear knew or should have known that Adams was likely to commit such an act, I would hold, as a matter of law, that his alleged negligence cannot be attributed to Goodyear under the theory of negligent entrustment.

### Conclusion

Accordingly, I would overrule Mayes's sole issue and affirm the judgment of the trial court.