OPINION

 

No. 04-10-00388-CV

 

Maria de los Angeles Salinas, et al.

 

and

 

Rosalinda Netro, et
al.,

Appellants

 

v.

 

Briggs Ranches, et al.,

Appellees

 

From the 229th
Judicial District Court, Starr County, Texas

Trial Court No. DC-04-66

Honorable Alex
William Gabert, Judge Presiding

 

Opinion by:   Phylis J. Speedlin, Justice

 

Sitting:                     Phylis J. Speedlin, Justice

                     Rebecca
Simmons, Justice

                     Steven
C. Hilbig, Justice

 

Delivered and
Filed:  May 25, 2011

 

AFFIRMED

 

Maria de los Angeles
Salinas, et al. challenges a take-nothing judgment rendered in favor of Briggs
Ranches.  We affirm the trial court’s judgment.

Factual Background

Jose Luis Ochoa was hired
by Briggs Ranches in the fall of 2002 to work as a ranch hand on El Mileno
Ranch, a 6,000-acre cattle ranch located in Starr County.  Briggs Ranches’s
general manager, Joe Jones, interviewed Ochoa and decided to hire him after
Ochoa was recommended by a local merchant.  Ochoa’s direct supervisor was
Johnny Light, the ranch manager.  After a few days on the job, Ochoa and his
wife were invited to live on the ranch in a trailer house.  Briggs Ranches also
hired Lane & Reeves Construction Company to build concrete water tanks on
the ranch.  On the evening of January 6, 2003, Lane & Reeves requested that
its crew be permitted to stay at the ranch to avoid renting motel rooms or
driving back to Alice.  One of the Lane & Reeves owners, Dutton Lane,
stayed in cabins with the crew, which included brothers Eugene and Victor
Salinas as well as Ruben Vela.  Ochoa and his wife were the only people
affiliated with Briggs Ranches present at the ranch that night.  In fact, the
only other person who lived on the ranch, Light, was in Victoria that night.  

At about 6:00 p.m., Ochoa
saw the Lane & Reeves crew arriving at their cabins and began talking to
Eugene.  Ochoa still needed to feed the horses, and Eugene and Victor accompanied
him during that task; then Ochoa gave them a brief tour of the ranch.  The three
men returned to the cabins, and Ochoa gave the crew meat and firewood and
started a fire.  Ochoa then went to his trailer to get his car and returned
with his television, a VCR, and some movies for the crew to watch.  Between 7:00
and 8:00 p.m., Ochoa, Eugene, and Victor made a beer run in Ochoa’s car.  Ochoa
drove down the main ranch road, onto the highway, and to the Super Circle Seven
convenience store.  The three men returned with a 24-pack of beer, which was
shared by seven men, including Lane. 

At about 11:00 p.m.,
Ochoa, Vela, Eugene, and Victor returned to the store to buy more beer. 
Knowing that he had been drinking, Ochoa decided to stay on the ranch instead
of risk driving on the adjacent highway.  He drove two miles along a dirt road
just inside the ranch’s 8-foot game fence.  The fence had a gate next to the
convenience store.  The gate was locked, so the group of men climbed over the
fence, bought two 12-packs of beer, and returned to Ochoa’s car.  Ochoa drove
back on the dirt road until he reached the paved main ranch road.  At that
time, Ochoa sped up, driving over 90 mph, and crashed into a tree.  Vela and
Eugene died in the wreck.  Victor suffered a broken leg and a head laceration. 
Ochoa pleaded guilty to two counts of manslaughter and was sentenced to a term
of confinement.  

Maria de los Angeles
Salinas, individually as surviving spouse of Eugene Isidro Salinas, on behalf
of the Estate of Eugene Isidro Salinas, and as next friend of the minor
children of Eugene Isidro Salinas, deceased (i.e., Geno Salinas, Aliyah Bella
Salinas, and Malcolm Eugene Salinas); Peggy Salinas, individually as surviving
natural mother of Eugene Isidro Salinas, deceased; Isabel Hernandez,
individually as surviving spouse of Ruben Vela, Jr., on behalf of the Estate of
Ruben Vela, Jr., and as next friend of the minor children of Ruben Vela, Jr.,
deceased (i.e., Savannah Vela and Stephanie Vela); and Victor Isidro Salinas
(collectively, Salinas)[1]
sued Briggs Ranches[2]
for negligence and gross negligence, alleging theories of respondeat superior
and negligent hiring and retention.  

At trial, Salinas argued
that Briggs Ranches should have checked Ochoa’s driving record and criminal
background before hiring him.  Had they done so, they would have discovered
that Ochoa served time in prison for auto theft, and that he had also been
convicted of unauthorized use of a motor vehicle; Ochoa was released from
prison in 1990.  Additionally, Ochoa was involved in a previous accident where
he fell asleep at the wheel after drinking and crashed his car into a tree;
Ochoa was not cited or prosecuted for that accident.  Ochoa testified that if Briggs
Ranches had asked him about his prior convictions, he would have answered
truthfully.  Jones testified that he did not check Ochoa’s driving record
because Jones did not hire Ochoa to drive any ranch vehicles.  Regarding a
criminal background check, Jones did not know of any ranching operation that
conducted such checks on its ranch hands.  

Additionally, Salinas
argued that Briggs Ranches should have fired Ochoa after the so-called
“Renteria incident” on November 28, 2002.  This incident occurred shortly after
he was hired when the ex-husband of Ochoa’s wife, a man referred to as
Renteria, came to the ranch to visit his children.  Ochoa and Renteria drank
some beer.  Ochoa felt he had too much to drink and his wife did not feel like
driving, so they told Renteria to stay overnight.  Later that night, Renteria
left the ranch in Ochoa’s car.  Ochoa called the police and followed on a
tractor.  He saw pieces of his car and discovered that Renteria hit a cow.    

The next day, Ochoa
called Light about the incident and admitted he and Renteria had been
drinking.  Light told Ochoa that Renteria was not allowed to come back to the
ranch, and admonished Ochoa to slow down his drinking and to not let things
“escalate the way it did.”  Light did not testify because he died before trial;
however, Light talked with Jones about the incident and Jones testified
regarding their discussion.  Jones stated that the incident “wasn’t completely
[Ochoa’s] fault,” and Jones did not recommend his termination or look further
into his background as a result of the incident.  Instead, Jones recommended
that Light visit Ochoa, reprimand him, and advise him that similar incidents
would not be tolerated.  Although Jones knew Ochoa and Renteria had been
drinking, he did not believe that they were drunk.  After seeing that the cow
was not hurt, he concluded that Renteria had not been driving very fast.  Jones
testified that El Mileno Ranch did not have any policies in place—written or
otherwise—regarding employee conduct.

Three liability questions
were submitted to the jury.  The first question asked, “Did the negligence, if any,
of those named below proximately cause the occurrence in question?”  The jury
answered “yes” as to Ochoa, Eugene Salinas, Ruben Vela, Victor Salinas, and
Lane & Reeves, but answered “no” as to Briggs Ranches.  Question No. 2
asked whether Ochoa was acting in the course and scope of his employment on the
occasion in question; the jury answered “no.”  The third question asked, “Was
the negligence of Jose Luis Ochoa which you found in Question No. 1 committed
by an employee of Briggs Ranches on premises under the possession and control
of Briggs Ranches?”  Again, the jury answered “no.”  In accordance with the
jury’s verdict, the trial court rendered a take-nothing judgment in favor of
Briggs Ranches.  

On appeal, Salinas challenges
the jury’s “no” answer to Question No. 3.[3]  She argues that under Otis
Engineering,[4]
an employer is liable for the torts committed by its off-duty employee on the
employer’s premises.  Thus, Salinas maintains the jury’s answer to Question No.
3 is not supported by the evidence[5]
and stipulations in the case, warranting a reversal of the judgment and retrial
of all issues. 

Standard of Review —
Sufficiency of the Evidence

 

“When a party attacks the legal sufficiency of an
adverse finding on an issue on which she has the burden of proof, she must
demonstrate on appeal that the evidence establishes, as a matter of law, all
vital facts in support of the issue.”  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 241 (Tex. 2001).  In conducting a legal sufficiency review, we review
the evidence presented at trial in the light most favorable to the jury’s
verdict, crediting favorable evidence if reasonable jurors could and
disregarding contrary evidence unless reasonable jurors could not.  Del Lago
Partners, Inc. v. Smith, 307 S.W.3d 762, 770 (Tex. 2010); City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  If there is no evidence to
support the finding, then we examine the entire record to determine whether the
contrary proposition is established as a matter of law.  Dow Chem. Co.,
46 S.W.3d at 241.  Thus, Salinas’s issue will be sustained only if her position
is conclusively established by the evidence.  Id.    

A party challenging the
factual sufficiency of a jury finding upon which that party had the burden of
proof must demonstrate that “the adverse finding is against the great weight
and preponderance of the evidence.”  Id. at 242.  We must first
examine the record to determine if there is some evidence to support the
finding.  Id. at 241-42.  If there is, we must then determine whether
“the finding is so contrary to the overwhelming weight and preponderance of the
evidence as to be clearly wrong and manifestly unjust, or if the great
preponderance of the evidence clearly supports its non-existence.”  W. Wendell
Hall, Hall’s Standards of Review in Texas, 42 St. Mary’s L. J. 1, 42 (2010) (quoting Castillo v. U.S.
Fire Ins. Co., 953 S.W.2d 470, 473 (Tex. App.—El Paso 1997, no writ)). 
Regardless of whether the “great weight” challenge is to a finding or a
non-finding, “[a] court of appeals may reverse and remand a case for new trial
[only] if it concludes that the jury’s ‘failure to find’ is against the great
weight and preponderance of the evidence.”  Ames v. Ames, 776 S.W.2d
154, 158 (Tex. 1989).  

Discussion

 

Otis Engineering 

 

Salinas contends that one
sentence from Otis Engineering Corp. v. Clark, 668 S.W.2d 307
(Tex. 1983), controls this appeal, i.e., that an employer is liable for the
off-duty torts of his employees which are committed on the employer’s premises
or with the employer’s chattels.  Id. at 309.  Accordingly, we begin our
analysis by first examining Otis Engineering.  

In Otis Engineering, the husbands of two women killed in
an automobile accident sued Otis Engineering Corp. for wrongful death based on
the actions of Robert Matheson, an Otis employee, who caused the fatal accident
shortly after leaving work.  Id. at 308.  Matheson
had a history of drinking on the job, and had gone to his car to consume
alcohol several times on the day of the accident.  Id.
 “Matheson’s extreme state of intoxication
was well known
to his supervisor
and fellow workers,”
causing several employees to report to the Otis supervisor that Matheson was
exhibiting signs of some incapacity, perhaps intoxication.  Id.
 Halfway through his shift, the supervisor suggested that Matheson drive home.  Id.  While escorting Matheson to the parking lot,
the supervisor asked if Matheson was all right and could make it home, and
Matheson answered in the affirmative.  Id. 
Matheson caused the fatal automobile accident thirty minutes later.[6]  Id.  His
blood alcohol level was 0.268, a level at which the medical examiner testified
all persons would exhibit signs of intoxication observable to the average
person.  Id.

Against this factual
background, the Otis Engineering court grappled with what duty, if any,
the employer owed to the third parties injured by Matheson’s conduct.  Id.
at 310.  The court weighed the familiar factors of risk, foreseeability,
and likelihood of
injury against
the burden of guarding against
the injury and
the consequences of placing that burden
on the employer.  Id. at 309. 
The court ultimately imposed a duty, holding that, “when,
because of an
employee’s incapacity, an employer exercises
control over the
employee, the employer
has a duty to take such action as a reasonably prudent employer
under the same
or similar circumstances
would take to
prevent the employee
from causing an
unreasonable risk of
harm to others.”  Id. at 311.  Based upon this
holding, the court found that Otis did owe a duty to the families of the women
killed by Matheson, and further found that a fact question existed as to
whether Otis acted as a reasonable and prudent employer in sending Matheson
home in an obviously intoxicated state.  Id.  

           Prior to reaching its holding, the Otis
Engineering court noted as part of its duty analysis:

In order to establish tort liability,
a plaintiff must initially prove the existence and breach of a duty owed to him
by the defendant.  Abalos v. Oil Dev. Co. of Tex., 544 S.W.2d 627, 631
(Tex. 1976).  As a general rule, one person is under no duty to control the
conduct of another, Restatement (Second)
of Torts § 315 (1965), even if he has the practical ability to exercise
such control.  Trammell v. Ramey, 231 Ark. 260,
329 S.W.2d 153 (1959).  Yet, certain relationships do impose, as a matter of
law, certain duties upon parties.  See e.g., Restatement (Second) §§ 316-20.  For instance, the
master-servant relationship may give rise to a duty on the part of the master
to control the conduct of his servants outside the scope of employment.  This
duty, however, is a narrow one.  Ordinarily, the employer is liable only for
the off-duty torts of his employees which are committed on the employer’s
premises or with the employer’s chattels.  Restatement (Second) § 317.  

 

Id. at 309 (emphasis added).  This is the
extent of the majority’s discussion of Section 317.  

Without acknowledging
that Otis was decided on other grounds, Salinas maintains that the
above-quoted reference to Section 317 controls the instant case.  In support of
this argument, Salinas also cites four subsequent cases in which courts have
repeated the above-bolded language.  See, e.g., Nabors Drilling, U.S.A.,
Inc. v. Escoto, 288 S.W.3d 401, 404-05 (Tex. 2009) (“An employer ordinarily
will not be liable for torts committed by off-duty employees except when the
torts were committed on the employer’s premises or with the employer’s
chattels.”); Loram Maintenance of Way, Inc. v. Ianni, 210 S.W.3d 593, 596
(Tex. 2006) (“typically an ‘employer is liable only for the off-duty torts of
his employees which are committed on the employer’s premises or with the
employer’s chattels’”); Ginther v. Domino’s Pizza, Inc., 93 S.W.3d 300,
304 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (“An employer is only
liable for its employees’ off-duty torts when they are committed on the
employer’s premises or with the employer’s chattels.”); Darensburg v. Tobey,
887 S.W.2d 84, 90 (Tex. App.—Dallas 1994, writ denied) (“For example, employers
are liable for the negligence of off-duty employees, even though they lack
control over their off-duty behavior, if the tort is committed on the
employer’s premises or with the employer’s chattels.”).  None of these cases,
however, discuss or analyze Section 317 or what Salinas refers to as “the Otis
Engineering duty.”  In fact, none of the cases involve an employee’s
off-duty tort while on his employer’s premises.  In Nabors, the
complained-of accident occurred off the employer’s premises while the off-duty
employee was driving his personal vehicle.  Nabors, 288 S.W.3d at 404. 
Likewise, in Ianni, there was no contention that the shooting incident
complained of occurred at a site controlled by the employer or that the
off-duty employee was using company equipment at the time of the shooting.  Ianni,
210 S.W.3d at 596 n.3.  In Ginther, the plaintiffs’ teenage daughter was
killed when the vehicle she was riding in struck a stalled car on the freeway;
the stalled car was driven and owned by an off-duty pizza delivery driver.  Ginther,
93 S.W.3d at 302-03.  The court of appeals affirmed the summary judgment
granted by the trial court, holding that the employer did not have a common law
duty to determine the mechanical reliability of the vehicles used by its
delivery drivers or to ensure that its drivers maintained liability insurance
on their vehicles.  Id. at 305.  The tort in Darensburg was
committed on the employer’s premises; however, the allegedly-negligent employee
was undisputedly on-duty at the time.  Darensburg, 887 S.W.2d at 85-86. 
In sum, although the cases relied on by Salinas repeat the dicta used in Otis
Engineering, none involve a factual scenario where an off-duty employee
commits a tort on the employer’s premises.  Therefore, these cases neither
expound on the duty owed by an employer when his off-duty employee commits a
tort on its premises, nor support Salinas’s argument that Briggs Ranches is
liable for its employee’s conduct without any further showing than that the
tort was committed on Briggs Ranches’ property.

Section 317 of the Restatement of Torts

Finding no support for
Salinas’s reading of Otis Engineering in case law, we turn to the
Restatement.  The actual text of Section 317 of the Restatement of Torts,
entitled “Duty of Master to Control Conduct of Servant,” provides: 

A master is under a duty to exercise
reasonable care so to control his servant while acting outside the scope of his
employment as to prevent him from intentionally harming others or from so
conducting himself as to create an unreasonable risk of bodily harm to them, if


(a) the servant 

(i) is upon
the premises in possession of the master or upon which the servant is
privileged to enter only as his servant, or 

           (ii) is using a chattel of
the master, and 

(b) the master 

(i) knows or
has reason to know that he has the ability to control his servant, and


           (ii) knows or should know
of the necessity and opportunity for exercising such control. 

 

Restatement
(Second) of Torts § 317 (1965) (emphasis added).  Thus, Section
317 provides that a master is under a duty to use reasonable care to control
the actions of his servant while the servant is acting outside the scope of his
employment to prevent him from intentionally harming others or from so
conducting himself as to create an unreasonable risk of bodily harm to them, if
the servant is on the master’s premises and the master knows or has
reason to know that he has the ability to control his servant, and knows
or should know of the necessity and opportunity for exercising such control. 
Foradori v. Harris, 523 F.3d 477, 488 (5th Cir. 2008).  

We have located only one
Texas case that elaborates on the Section 317 duty of an employer to control
the actions of its off-duty employee when the employee is on the employer’s
premises or using the employer’s chattels.  In Maclay,
a medical partnership was sued because one of the physician partners
alienated the affections of a patient’s mother.  Kelsey-Seybold Clinic v.
Maclay, 466 S.W.2d 716, 717 (Tex. 1971).  The Court affirmed the judgment
of the court of appeals reversing a summary judgment in favor of the clinic,
stating:  

We are also of the opinion that the
Clinic owed a duty to the families of its patients to exercise ordinary care to
prevent a tortious interference with family relations. It was not required to
maintain constant surveillance over personnel on duty or to inquire into and
regulate the personal conduct of partners and employees while engaged in their
private affairs. But if and when the partnership received information
from which it knew or should have known that there might be a need to take
action, it was under a duty to use reasonable means at its disposal to prevent
any partner or employee from improperly using his position with the Clinic to
work a tortious invasion of legally protected family interests. This
duty relates only to conduct of a partner or employee on the premises of the
Clinic or while purportedly acting as a representative of the Clinic elsewhere.
Failure to exercise ordinary care in discharging that duty would subject the
Clinic to liability for damages proximately caused by its negligence. See
Restatement, Second, Torts, §
317.

 

Id. at 720 (emphasis added).  The Maclay court thus made clear that under Section 317, an
employer may be liable for its own negligence in failing to exercise reasonable
care over the conduct of its employee on the employer’s premises only when the
employer receives information from which it knows or should know of the
necessity for such control.  See id.  

The Fifth Circuit has
also analyzed an employer’s duty to control the conduct of its off-duty
employee while on the employer’s premises.  In Foradori
v. Harris, an off-duty restaurant employee challenged a customer, Michael
Foradori, to a fight.  Foradori, 523 F.3d at
481-82.  The two had a loud and heated verbal argument inside the restaurant
that lasted between fifteen and twenty minutes.  Id.
at 482.  The restaurant manager heard and observed the confrontation.  Rather
than defusing the situation, the manager instead ordered the two outside and
permitted a crowd, including employees and customers, to follow them
outside.  Id.  The manager did not call the police
or take other precautions.  The cook believed a fight was about to occur and
followed the crowd outside.  Id.  As soon as
Foradori reached the edge of the parking lot, another off-duty restaurant
employee unexpectedly punched Foradori from behind.  Id.
at 491.  Foradori’s fall from an elevated embankment rendered him unconscious,
broke his neck, and resulted in his quadriplegia.  Id.
at 482.

Applying Section 317, the
Fifth Circuit found that the restaurant had a duty to control its off-duty employees
so as to protect
patrons like Foradori
from any foreseeable
unreasonable risk of
harm created by
those employees, because
the employees’ conduct
occurred on the restaurant’s premises, and the jury reasonably
could have found
that the restaurant manager knew or had reason to know that she had the ability to control them,
and knew or should have known
of the necessity and opportunity for
exercising such control.  Id. at 492.  

Did Briggs Ranches Owe a Section 317 Duty to
Salinas?

Having
determined the duty imposed upon an employer under Section 317, we must now
decide whether, under the facts of this case, Briggs Ranches owed a duty to
Salinas to control the conduct of its employee, Ochoa.  In any negligence case,
duty is the threshold inquiry.  El Chico Corp. v. Poole, 732 S.W.2d 306,
311 (Tex. 1987).  “[D]uty is the function of several interrelated factors, the
foremost and dominant consideration being foreseeability of the risk.”  Id.
(citing Otis Eng’g, 668 S.W.2d at 309; Corbin v. Safeway Stores, Inc.,
648 S.W.2d 292, 296 (Tex. 1983)); see also Mellon Mortg. Co. v.
Holder, 5 S.W.3d 654, 659 (Tex. 1999) (noting that foreseeability is an
essential component of duty).  The test for foreseeability is what one should
under the circumstances reasonably anticipate as a consequence of his or her
conduct.  Foster v. Denton Indep. Sch. Dist., 73 S.W.3d 454, 465 (Tex.
App.—Fort Worth 2002, no pet.).  “[T]he existence of duty is a question of law
for the court to decide from the facts surrounding the occurrence in
question.”  Ianni, 210 S.W.3d at 598 n.5 (quoting Greater Houston
Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990)); Otis Eng’g,
668 S.W.2d at 312.  The existence of duty only becomes a question for the jury
when the evidence about foreseeability as it relates to duty is disputed.  Union
Pac. R.R. Co. v. Williams, 85 S.W.3d 162, 169 (Tex. 2002).  

Thus, turning to the case
before us, in order to establish that Briggs Ranches owed a duty to Salinas
under Section 317, Ochoa’s conduct in causing the fatal accident must have been
reasonably foreseeable to Briggs Ranches.  See Restatement (Second) of Torts § 317(b)(ii).  We conclude that the evidence
at trial established as a matter of law that Ochoa’s conduct in causing the
accident was not foreseeable to Briggs Ranches.   First, other than Ochoa and
his wife, no one from the ranch was present on the night of the accident, and
could not have known that Ochoa was drinking with the Lane & Reeves crew
and making beer runs in his personal vehicle.  Accordingly, the ranch did not
have actual knowledge of a need to control Ochoa.  In addition, there was no
evidence that Briggs Ranches should have anticipated that Ochoa would drink and
drive at an excessively high rate of speed on the ranch.  Ochoa was interviewed
and hired by the ranch manager based on a recommendation.  Ochoa was not
expected to drive ranch vehicles, and therefore the ranch did not examine his
driving record.  Further, the ranch did not have reason to investigate Ochoa’s
criminal background, and even if it had, it would not have discovered any
previous DWI incidents because Ochoa was never arrested or prosecuted for DWI. 
The criminal violations on his record, including unauthorized use of a motor
vehicle, were remote in time and different in kind from his actions on the
night of the accident.  See Barton v.
Whataburger, Inc., 276 S.W.3d 456,
463-64 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding that employee’s
two prior felony convictions for delivery of crack cocaine did not make his
participation in violent robbery and murder on employer’s premises foreseeable
to employer); Houser v. Smith, 968 S.W.2d 542, 545 (Tex. App.—Austin
1998, no pet.) (employee’s previous forgery convictions did not make employee’s
assault of woman on employer’s property reasonably foreseeable to employer).  And
although Salinas contends the “Renteria incident” establishes foreseeability,
we disagree.  To the contrary, that incident illustrates that Briggs Ranches
observed that Ochoa chose not to drive after drinking. 

Based on the undisputed
evidence at trial, Briggs Ranches did not know, or have reason to anticipate,
that Ochoa would consume alcohol and then drive his car at a high rate of
speed, thus causing a fatal accident.  Accordingly, there is no evidence of
foreseeability.  Absent foreseeability, Salinas cannot establish the duty
element of a Section 317 cause of action.  Because we conclude that the
evidence at trial established as a matter of law that Ochoa’s conduct was not
foreseeable to Briggs Ranches, the trial court should not have submitted
Question No. 3 to the jury, and therefore the question was immaterial.  See Southeastern
Pipe Line Co. v. Tichacek, 997 S.W.2d 166, 172 (Tex. 1999) (a question is
immaterial when it should not have been submitted because it calls for a
finding beyond the province of the jury, such as a question of law); Spencer
v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994).  Given that
Question No. 3 was immaterial, Salinas’s complaint that the jury erred in
answering the question in the negative is overruled.  

Conclusion

Based on the foregoing,
we overrule Salinas’s issues on appeal and affirm the judgment of the trial
court.

Phylis J. Speedlin, Justice

 

 

 









[1]
Rosalinda Netro, as next friend of Leslie Vela, minor child of Ruben Vela, Jr.,
deceased, and Monique Moreno  Benavides, individually, as child of Ruben Vela,
Jr., deceased, intervened in the lawsuit.  

 





[2]
Salinas’s original petition named Briggs Ranch Ltd. d/b/a  Briggs Ranch and
Briggs Ranch Management L.L.C. as defendants.  Later versions of the petition
named R.W. Briggs, Jr. d/b/a Briggs Ranches as defendant.  Mr. Briggs died
before trial and his estate, with Eugene E. Becker, Jr. acting as the legal representative,
took his place as a defendant.  Our use of the term “Briggs Ranches” refers to
Briggs and his estate in their role as a defendant in this suit.





[3]
Salinas raises five related issues on appeal as follows: (1) Under Otis
Engineering as applied to the facts of this case, is the employer liable
for the torts of its employee which were committed on the employer’s premises
regardless of whether the employee was on or off the clock?; (2) Was the jury’s
finding that the negligent conduct of Jose Luis Ochoa was not committed by a
Briggs Ranch employee on the premises of the ranch unsupported by legally
sufficient evidence?; (3) Was the jury’s finding that the negligent conduct of
Jose Luis Ochoa was not committed by a Briggs Ranch employee on the premises of
the ranch unsupported by factually sufficient evidence?; (4) Was the jury’s
finding that the negligent conduct of Jose Luis Ochoa was not committed by a
Briggs Ranch employee on the premises of the ranch contrary to the parties’
stipulations?; and (5) Does the jury’s finding against the evidence and
stipulations in the case warrant a reversal and retrial of all issues?  Salinas
does not challenge the jury’s answers to Questions No. 1 and No. 2.

 





[4]
Otis Eng’g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983).  

 





[5]
Salinas argues the evidence is both legally and factually insufficient to
support the jury’s “no” answer to Question No. 3.

 





[6]
We note that Otis Engineering did not involve a tort on the
employer’s premises.